[S. F. No. 15633.   In Bank.—December 23, 1936.]

In the Matter of the Estate of MARY BELLE McLELLAN, Deceased.   FRANK L. McLELLAN et al., Appellants, v. MARY GRACE DeGEAR, Respondent.

Hankins & Hankins for Appellants.

Alfred J. Harwood for Respondent.

EDMONDS, J.—By this appeal, there is presented the question of the right of the beneficiary of a testamentary trust to receive interest on the trust fund from the date of the death of the testatrix; also, the duties of the trustees of such a trust.

Mary Belle McLellan died January 15, 1927, leaving a will which was admitted to probate. By her will, she bequeathed $7,000 to the appellants as trustees "with instructions to invest and re-invest the same in good safe loans or securities and pay the income thereof together with such portion of the principal as they deem necessary or advisable for the support of my sister Mary Grace DeGear". She also named the same persons as executors. At the conclusion of the probate proceeding, the executors presented their account and report with a petition for allowance and distribution. This report was settled and distribution of the estate ordered by a decree providing in part as follows: "That the persons to whom, and the share or proportions in which said persons are en-

titled to distribution of the Estate according to law and the terms of the Will of said Decedent, are as follows, to-wit: . . . Edward [Edgar] W. McLellan, Frank L. McLellan and Asa D. McLellan, as Trustees $7,000.00.'' This decree also approved the payment of $105 for the inheritance tax on the bequest.

The first account of the trustees under the trust was filed in 1935. It recites that the trustees are chargeable as follows: ''Jan. 19, 1928, Distributed to said trustees by Decree of Distribution duly made and rendered in the above entitled Court $6,895.00.'' The account further states: ''That at the time of distribution, a part of the property of the estate consisted of an interest in contract of sale of real property entered into by decedent during her life by the terms of which, interest on deferred payments was payable at the rate of 7 per cent per annum and which said interest was being regularly collected; said interest in said contract of sale was appraised in the course of administration at the sum of $104,915.99. That said trustees considered said contract of sale of real estate made by said decedent during her life, to be good, safe security and they set apart an interest in said contract of sale of real property as the trust fund for Mary Grace DeGear during her life with remainder on her death to the then living children of Charles D. McLellan, deceased, in the sum of $6,895.00. That interest on said sum of $6,895.00 at the rate of 7 per cent per annum, was collected until June 20, 1930, all of which has been disbursed and accounted for by the trustees as shown by the foregoing account.''

The beneficiary of the trust filed objections and exceptions to this account on several grounds; first, because the account failed to charge the trustees with interest on $6,895 from the date of the death of the testatrix; second, because the account failed to charge the trustees with interest at 7 per cent from January 15, 1930, to the date of the account; and finally, because the trustees took credit for miscellaneous items aggregating $37.67; an item of $16.35, being a *pro rata* amount of the costs of certain litigation; and for $50 paid for attorney's fees in connection with the management of the trust. After a hearing on the objections the trial court gave judgment against the trustees for interest on the sum of $6,895 at the rate of 7 per cent from the date of the death of the testatrix

to August 25, 1935, compounded annually, less the amounts which they had paid to her, and decreed "that the account of said trustees be, and the same is hereby disapproved and disallowed". However, the court allowed the trustees credit for $21.17 of the miscellaneous items and also for the $50 attorney's fee paid. They were also allowed a further credit of $50 for attorneys' fees and $100 for their own services.

The contentions of the respondent which were upheld by the trial court below are, first, that the trustees should have collected interest on the amount of the bequest from the date of the death of the testatrix, and, second, that the trustees used the trust fund in their own business and are chargeable with interest thereon at the statutory rate.

█ Concerning the first contention, the record shows that the trustees, as executors under the will of Mary Belle McLellan, petitioned for distribution of her estate but made no request for interest upon the legacy. The decree of distribution allowed no interest, and the trustees paid no interest to the beneficiary of the trust for the period prior to the date of the decree. More than seven years after that decree became final, respondent for the first time claimed interest for this period. This she cannot do. Having become final the decree of distribution was not subject to collateral attack in this proceeding for the settlement of the account of the trustees. (See *In re Estate of Mary Belle McLellan,* 14 Cal. App. (2d) 271 [57 Pac. (2d) 1338], an appeal from an order disallowing an account of the appellants here as trustees of another testamentary trust under the same will.)

█ The judgment allowing the respondent interest on the trust fund at the statutory rate from the date of the decree of distribution presents another question. The trial court found that the trustees borrowed the trust fund from themselves and used it in their own business, giving their own note therefor. The trustees, on the other hand, assert that the trust fund is in substantially the same form as when received by them under the decree of distribution, and that they only continued the same investment which had been distributed to them as trustees from the decedent's estate.

It appears that the deceased in her lifetime was the owner with others, including the three persons whom she named as executors and trustees under her will, of certain real

estate which they conveyed to a trust company for the purpose of subdivision and sale. This was to be accomplished through Poinsettia Land Company, a corporation which, as selling agent, entered into a contract with the trust company providing that the land should be sold and the proceeds divided in certain proportions. This contract also fixed the amount to be received by the owners for the property and required the selling agent to pay interest at 7 per cent on the amount to be received by the owners or the unpaid balance thereof. The interest of Mrs. McLellan in this contract at the time of her death was appraised at approximately $104,000. Upon distribution of the estate, the trustees set apart an interest in the contract to the amount of $6,895 as the trust fund for respondent, and the proportionate amount of interest earned thereon was credited to respondent and paid to her by the trustees until June 20, 1930. On that date the land company defaulted and thereafter, in proceedings to determine title to the property, a decree was made directing the trust company to reconvey the property to George B. McLellan, 5/24th; Edgar W. McLellan, Frank L. McLellan and Asa Danforth McLellan as successors in interest of Mary Belle McLellan, 4/24th; Asa Danforth McLellan, 5/24th, Frank L. McLellan, 5/24th, and Edgar W. McLellan, 5/24th. Some time later, Asa Danforth McLellan, George B. McLellan and Frank L. McLellan organized a corporation under the name of McLellan Estate Company to take title to the property, and the corporation executed and delivered its promissory note payable to them as trustees in the sum of $6,895, with interest at 6 per cent per annum from January 15, 1933. This note the trustees claim was given in exchange for the interest of the trust in the Poinsettia Land Company contract, and thereafter constituted the *corpus* of the trust.

However, the estate of the deceased at the time of distribution had not only the real estate contract but also sufficient cash to have paid the legacy for respondent in full. The probate court did not distribute any interest in the contract to the trustees. By its decree the court distributed money to the trustees, but according to their account, they "set apart an interest in said contract of sale of real property as the trust fund". The result was that the executors paid the money to themselves as the residuary legatees under

the will and as trustees accepted an undivided interest in the real estate contract as the legacy for the benefit of the respondent.

Conceding that this transaction may have been actuated by the utmost good faith and that the trustees considered that they were complying with the terms of the will, it amounted to an unauthorized use of the trust fund. Although the trustees were not parties to the real estate contract, it represented a tract of land in which they had an interest. Whatever was done by the Poinsettia Land Company under its contract affected the trustees in their individual capacities as the beneficial owners of the land. This amounted to mingling the trust estate of Mrs. DeGear with the individual property of the trustees, which the law expressly prohibits. "Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or any one for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary." (Sec. 2230, Civ. Code.) Also, "A trustee may not use or deal with the trust property for his own profit. . . . " (Sec. 2229, Civ. Code.) These provisions of the code are a statement of fundamental principles, to which courts have adhered for centuries. It has always been against public policy for a trustee to occupy any position in which his actions affect his individual interests. "When one undertakes to deal with himself in different capacities—individual and representative—there is a manifest hostility in the position he occupies. His duty calls upon him to act for the best interests of his principal; his self-interest prompts him to make the best bargain for himself. Humanity is so constituted that when these conflicting interests arise the temptation is usually too great to be overcome; and duty is sacrificed to interest. In order that this temptation may be avoided, or, if indulged in, must be at the peril of the trustee, it has been wisely provided that the trustee shall not be permitted to make or enforce any contract arising between himself as trustee and individually with reference to any matter of the trust, nor will the court enter into any examination of the honesty of the transaction." (*Pacific Vinegar & Pickle Works* v. *Smith,* 145 Cal. 352, 365 [78 Pac. 550, 104 Am. St. Rep. 42].)

These principles apply to the note given by the McLellan Estate Company as well as to the interest in the real estate contract. The trustees were the officers and directors of the corporation to which the land in which they had an interest was conveyed. As such officers they executed and delivered the note of the corporation to themselves as trustees of the trust fund which they were charged with the duty of investing for the benefit of Mrs. DeGear. They must, therefore, be held to have used the trust fund in their own business and to be responsible accordingly. The court properly charged the trustees with interest at the statutory rate and disallowed the charges claimed by them in connection with the real estate contract. (*Gaver* v. *Early,* 191 Cal. 123, 126 [215 Pac. 394].)

Appellants complain of the allowance made for their compensation as trustees and also that for their attorneys. Such allowances rest always in the sound discretion of the court. (Sec. 1122, Probate Code; *Estate of Duffill,* 188 Cal. 536, 546 [206 Pac. 42].) Not only is there no showing here of any abuse of that discretion but it does not appear other than by the record of the proceedings, what services have been rendered. Also, the court had a right to consider the actions of the trustees in the management of the trust property and to fix their compensation accordingly. (*Alison* v. *Goldtree,* 117 Cal. 545 [49 Pac. 571].)

Appellants challenge the sufficiency of the findings to support the judgment, and also insist that the probate court had jurisdiction only to pass upon the account of the trustees but not to render judgment against them for the payment of money upon which an execution might issue. With this latter contention we must agree. There is a fundamental distinction between the law and equity jurisdiction of the superior court and its probate jurisdiction. The latter is a strictly limited one. (*Parkman* v. *Superior Court,* 77 Cal. App. 321 [246 Pac. 334] ; *Estate of Hubbell,* 121 Cal. App. 38 [8 Pac. (2d) 530].) Section 1120 of the Probate Code, provides that ''When a trust created by a will continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction for the purpose of . . . settling the account and passing upon the acts of the trustee . . . '' Except for that statute the superior court would have no authority, in

the exercise of its probate jurisdiction, to hear and determine the account presented by a testamentary trustee. "And if the probate procedure laid down by the code is followed, then only relief under probate jurisdiction can be granted." (*Estate of Davis*, 136 Cal. 590, 597 [69 Pac. (2d) 412].) This relief does not include a personal judgment against the trustees. (*Costa* v. *Superior Court*, 137 Cal. 79 [69 Pac. 840].) However, the court passed upon the various items presented by the trustees in their account, and its conclusions upon them should have been embodied in a decree determining the *corpus* of the trust, fixing the amount due the beneficiary at the date of the account, and charging the trustees accordingly.

The judgment appealed from is reversed with instructions to the court below to make a decree in accordance with its conclusions upon the facts as stated in its findings and upon the principles stated herein, but charging the trustees with interest only from January 19, 1928; respondent to recover her costs on appeal.

Waste, C. J., Curtis, J., Seawell, J., Thompson, J., Shenk, J., and Langdon, J., concurred.

Rehearing denied.