[Civ. No. 12492. First Dist., Div. One. Jan. 12, 1944.]

Estate of ELIZA ITALIA EVANS, Deceased. ITALIA EVANS MOSS, Respondent, v. EVA V. FRY, Appellant.

D. T. Jenkins, R. V. Bressani and Robert E. Hayes for Appellant.

Cooley, Crowley & Supple and Leighton M. Bledsoe for Respondent.

WARD, J.—This is an appeal from a decree in probate in the estate of Eliza Italia Evans, deceased, by which the account of H. Ray Fry, trustee of a trust created by her will, was surcharged the sum of $7,171.46, with interest, being the value of three promissory notes, the investment in which resulted in a loss to the estate.

By her will Miss Evans devised and bequeathed her estate in trust for the benefit of Oliver Fairfield Evans, her brother, during his lifetime, the residue of the property to be paid upon his death to Italia Evans Moss, his daughter.

Fry, a practicing attorney, had been during the lifetime of the deceased her attorney and financial adviser, negotiating loans for her and attending to the collection of the interest and principal thereon. The notes so received constituted the bulk of her estate.

The three notes surcharged to the account of the trustee are referred to as the Ruge, Rogan and Pearson notes respectively. The Ruge note was for the sum of $1,800. It was executed during the lifetime of the deceased by Walter Ruge and Alva Ruge, and was payable to Geraldine Helbush, Fry's secretary. This note and three others, also to Geraldine Helbush, were given for loans to the Ruges, negotiated by Fry, from funds belonging to Miss Evans and others of his clients. They aggregated in all the sum of $6,265 and were secured in common by a mortgage upon crops to be grown during the years 1927, 1928 and 1929 upon an orchard in Santa Clara County. The land on which the crops were to be grown was covered by a mortgage of $10,000 to the Amer-

ican Trust Company. When the estate of Eliza Italia Evans was distributed to the trustee on November 3, 1928, the 1928 crop had been severed and disposed of. On December 12, 1928, a new crop mortgage was executed by the Ruges to Geraldine Helbush covering crops for the years 1929, 1930 and 1931 to be grown upon the same land.

There is evidence that the trustee used receipts from the sale of the Ruge crops in 1929, 1930 and 1931 to pay interest to the bank and principal and interest to other creditors of the Ruges, thus preferring such creditors to the trust estate; that he commingled funds belonging to the Evans estate with those of clients and friends for whom he acted as both attorney and investment counsel, and made no effort to convert the Ruge investment, the retention of which was never passed upon, authorized or approved by the court. Further, the obligation was never identified as belonging to the Evans estate until February 16, 1932, when the note, which had again been renewed a day or two before, was endorsed, without recourse, by Geraldine Helbush to Miss Evans' niece, the residuary legatee.

The Rogan note evidences a loan made by the trustee from the Evans trust funds. Mrs. Rogan was a client of Fry and the mother of a former employee of his. The note dated January 15, 1929, is for the sum of $1,500; it bears interest at the rate of seven per cent per annum and is secured by a deed of trust, second, however, to that of the Federal Land Bank. No interest has been paid on the note since July 15, 1930, and while the deed of trust is still a lien on the property the note was never renewed and has now become barred by the statute of limitations. It was endorsed by the trustee to the order of Mrs. Moss on February 18, 1931 on the settlement of the trustee's account. The Rogan loan was never authorized or approved by the court, nor did it appear in the account as a junior lien; neither was there any effort made to convert it into an investment suitable and proper for trust funds.

The Pearson note became part of the trust in this manner: Among the assets distributed to the trustee were two notes of Eva E. Paul, another client of Fry, aggregating $1,600, bearing interest at seven per cent and secured by a first deed of trust upon a home worth $2,500. In September, 1928, Mrs. Paul had placed in the hands of Fry for the purpose of sale, a note for $3,741, dated March 24, 1926, bearing interest at ·

six per cent, on which there remained an unpaid balance of $2,953.78. The makers of the note were Alfred and Thora Pearson; the note was secured by a deed of trust upon lands in the San Joaquin valley, and was second to a government farm loan. Fry took over this note for the account of the Evans trust estate and another client; $2,600 for the former and the balance for the latter, making payment to Mrs. Paul by discharging her indebtedness of $1,600 to the estate and paying her $1,000 of its funds. In the first account filed by Fry as trustee this transaction appears as follows: He reports the receipt of the sum of $1,600 in "full" payment of the Paul note, and, under the heading of "Disbursements" makes the following statement: "1929, . . . March 4. Loan to Alfred Pearson, secured by deed of trust, note bearing interest at 6%, payable semi-annually, $2,600." By this transaction the trustee exchanged a senior for a junior security which ultimately became valueless.

The trustee filed two accounts, the second purporting to be also a final account and being rendered shortly after the first. Both were duly allowed and settled as being true, just and correct. In them the above assets of the trust were not particularized but under the heading "Assets in hands of trustee," were included in "Promissory notes secured by trust deed or mortgage, $9,028.78," the Ruge, Rogan and Pearson notes being given their face value or the amounts then remaining due upon them.

The beneficiary for life under the trust, Oliver Fairfield Evans, having died shortly before the rendition of the purported second and final account of the trustee, this report and account also contained a petition for distribution to the ultimate beneficiary Italia Evans Moss; and the decree settling this account ordered distribution.

Shortly before, Mrs. Moss, who resided in Indiana, wrote Fry asking what his charge would be for collecting the outstanding notes. He replied that it would be five per cent of the income therefrom collected, to which she agreed, and Fry claimed his subsequent activities to be under this employment. He was never, however, discharged as trustee, and the court found that there was never any valid agreement between him and Mrs. Moss with respect to his handling of the trust estate but that his acts in this regard were performed as trustee under the supervision and jurisdiction of the court.

The securities of the estate other than the three hereinbefore discussed were soon liquidated and the proceeds duly remitted to Mrs. Moss. Some time later Fry advised Mrs. Moss that it was impossible to collect anything further, either principal or interest, although over a period of years he had been assuring her that the loans were safe investments and collectible.

Mrs. Moss on February 6, 1935, filed a petition for a further accounting by the trustee. This petition alleged that he had not distributed all the properties to her and, since his purported final account, had received additional sums of money. The trustee answered, alleging that he held the trust property, not paid over, as agent for the purpose of collection, and at the same time (March 20, 1935) filed an accounting wherein he showed that he had collected and paid over a considerable proportion of the notes owing the trust. He also set forth the three remaining notes which the beneficiary refused to accept. Nothing further was done until November, 1935, when Mrs. Moss filed a petition to set aside the two decrees settling the first and second accounts and asked that Fry be charged with the unpaid amounts on the three notes. The petition alleged that Fry carelessly and negligently invested and reinvested trust funds in promissory notes secured by junior liens; that funds of the trust estate had been commingled with his (the trustee's) personal funds and with those of clients; that loans were made of such funds to his clients, and that investments of said trust funds were made in his own name and in the names of his associates and employees; that said investments were worthless, and that such facts were concealed from the court in the accounting. It is further alleged that the facts were not discovered until 1935. To this petition Fry filed a demurrer, pleading among other grounds that the court as a probate court had no jurisdiction of the matter alleged. Petitioner thereupon filed objections to the accounting last rendered, in which she repeated the allegations of her petition of November, 1935. The demurrer was overruled and the trustee filed his answer. Upon these pleadings the case went to trial, with the result that the account of the trustee was surcharged in the sum of $7,171.46.

Fry having died during the pendency of the proceedings, Eva V. Fry was substituted for him, and now prosecutes this appeal. Appellant does not contend that the evidence is in-

sufficient to support the findings, but raises questions of jurisdiction, and in her closing brief (filed by new counsel after the death of counsel of record on appeal) states that a personal judgment against Fry was entered, and that the only proper relief under the circumstances of the case would be a judgment imposing a trust upon the estate.

The first question presented is that of jurisdiction. It is contended that the trial court sitting in probate had no jurisdiction to try the question of the trustee's derelictions prior to the date of the order settling final account and decreeing distribution. It was necessary to introduce the history of the various transactions and to connect evidence thereon with evidence of the trustee's conduct following distribution of the estate to Mrs. Moss on February 18, 1931, in order to show his failure to conscientiously and properly administer the trust after such date. Except as a connecting link, the history was not material, but the court was meticulously careful in drawing the findings to charge dereliction of duty based upon conduct after February 18, 1931.

Unless an order of the probate court involving the disposition of property is void on its face, a petition to set it aside after it has become final may not be entertained upon a collateral attack. The presumption as to the validity of final orders and decrees in probate proceedings, such as an order settling an account, applies as in the case of orders of a court of general jurisdiction. (*Security-First Nat. Bk.* v. *Superior Court,* 1 Cal.2d 749 [37 P.2d 69] ; *Ringwalt* v. *Bank of America,* 3 Cal.2d 680 [45 P.2d 967]; *Carr* v. *Bank of America,* 11 Cal.2d 366 [79 P.2d 1096, 116 A.L.R. 1282] ; *Estate of Richards,* 17 Cal.2d 259 [109 P.2d 923]; *Manning* v. *Bank of California,* 216 Cal. 629 [15 P.2d 746]; *McLellan* v. *McLellan,* 17 Cal.2d 552 [110 P.2d 1034].)

The rule laid down in *Security-First Nat. Bk.* v. *Superior Court, supra,* and other cases cited does not hold that a probate court of limited, or a court of general, jurisdiction does not have authority over matters still pending or not passed upon by a final decree, judgment or order. In the present case the probate court did not set aside or vacate the orders previously entered, nor did the decree herein purport to do so, as contended by the appellant, but merely determined that those orders did not pass upon certain acts and items, and that there was sufficient misfeasance subsequent to their set-

tlement to surcharge the trustee on his supplemental account.

Jurisdiction of the probate court continues until the final discharge of the one directed to make effective its order, and until such discharge the court retains jurisdiction for the purpose of compelling the execution of its order. (*Estate of Clary,* 112 Cal. 292 [44 P. 569]; *Maloney* v. *Massachusetts Bonding & Ins. Co.,* 20 Cal.2d 1 [123 P.2d 449].) In *Estate of Baxter,* 15 Cal.2d 166 [99 P.2d 276], where the court refused to receive inventories and accounts, it is said (pp. 169-170): "We conclude that the court's ruling was proper. If the amended final account, filed pursuant to section 932 of the Probate Code, and the evidence introduced or offered in support thereof, had indicated that certain moneys or property belonging to the Baxter estate were actually in the possession of the representative of Chandler's estate, the probate court would undoubtedly have had jurisdiction, notwithstanding the settlement of any prior account, to receive the report of the administrator to that effect, and to make any appropriate order of settlement and distribution. But such is not the import of the application in the present proceeding. The record does not show, nor do the appellants purport to claim, that Smith, as administrator of Chandler's estate and on behalf of that estate, is reporting as a fact that there is money or property in his possession in the amount alleged which belongs to the Baxter estate." In the present case the property was still in the possession of the trustee.

Appellant in his opening brief admits, at least for the purpose of argument, "that the Court retains jurisdiction over the Trustee after the decree of distribution out of trust to compel the distribution of the trust estate in accordance with the decree, and as an incident to that power, may compel an accounting."

A probate court has no general equity jurisdiction, but it has the power to apply equitable principles in carrying out its orders. (*Security-First Nat. Bk.* v. *Superior Court, supra.*) The cases cited by appellant, principally *McLaughlin* v. *Security-First Nat. Bk.,* 20 Cal.App.2d 602 [67 P.2d 726] and *Ormerod* v. *Security-First Nat. Bk.,* 21 Cal.App.2d 362 [69 P.2d 469], separate suits in equity seeking to vacate probate decrees, are not in point. In the McLaughlin case, the questions involved were the legality of investments and their merit as such; also that certain participating certificates were

void because no permit had been issued by the corporation commissioner. Similar facts appear in the Ormerod case, where at page 368 the court said: ''In the instant case it is not claimed the defendant has failed or neglected to account for any item. The charge is that it bought certificates not permitted by law and that since the purchase said certificates have depreciated in value. As we have shown no fraud is alleged and if, as claimed by the plaintiffs, the certificates purchased by the defendant have depreciated in value, such fact standing alone does not warrant a court of equity in opening, surcharging, or falsifying the accounts under attack.'' ■ In the present case, with reference to matters not previously reported, the probate court had the power to surcharge a trustee on a supplemental account made after a decree settling a final account. (*Estate of Blake*, 157 Cal. 448 [108 P. 287].) In *Estate of Hovland*, 38 Cal.App.2d 439, 446 [101 P.2d 500], the court said: ''It requires no citation of authority for the statement that orders settling accounts or ordering distribution can only be conclusive as to such items or issues as are included in the account or raised in connection with the petition for partial distribution. The doctrine of res judicata therefore has no application here.''

■ The settlement of accounts is not conclusive on omitted matters and these may be surcharged in subsequent accounts. (*Estate of Adams*, 131 Cal. 415 [63 P. 838].) At any time subsequent to a final settlement of accounts, an heir, devisee or legatee or his assignee, grantee or successor in interest, may, after due notice, file an application for the distribution of the residue of an estate. (Prob. Code, § 1020.) When a trust continues after distribution, the probate court retains jurisdiction to determine to whom property shall be delivered and is not concluded by a ''decree of distribution, of settling the accounts and passing upon the acts of the trustee.'' (Prob. Code, § 1120.) In *Estate of Smead*, 12 Cal. 2d 20, 24 [82 P.2d 182], the court said: ''Preliminarily, it should be stated that the court below in hearing and settling the accounts of the testamentary trustee herein was engaged in the exercise of its special and limited probate jurisdiction as distinguished from its general law and equity jurisdiction. (§ 1120, Prob. Code; *Estate of McLellan*, 8 Cal.2d 49, 55, 56 [63 P.2d 1120]; *Security-First Nat. Bk.* v. *Superior Court*,

1 Cal.2d 749, 753-758 [37 P.2d 69] ; *Thomas* v. *Superior Court,* 17 Cal.App.2d 40, 41 [61 P.2d 496] ; *Estate of Smith,* 4 Cal. App.2d 548, 552 [41 P.2d 565].) In the last cited case wherein this court denied a hearing, it is declared that 'We believe the language employed in the present section (1120) of the Probate Code was intended to broaden the jurisdiction of the probate court so as to give that court jurisdiction over practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust.' ''

■ In view of the language used in *Estate of Smith,* former decrees are not res judicata as to items not actually determined. (*Estate of Marre,* 18 Cal.2d 184 [114 P.2d 586].)

■ In discharging a trust a trustee must account for all moneys received and disbursed. (*Silva* v. *Santos,* 138 Cal. 536 [71 P. 703] ; *Estate of Clary, supra.*) ■ The administration of a trust in probate is not separable in parts to the extent that an incomplete final account is res judicata against a subsequent or supplemental account. In such a situation the probate court is not lacking or destitute of power; it may use the equitable and legal authority with which, as superior court, it is invested (*Estate of Dobbins,* 36 Cal.App.2d 536 [97 P.2d 1051]) in determining the rights of the parties with reference to concealed or non-adjudicated matters. (*Estate of Clary, supra.*) ■ The mingling of trust property with the property of others, or with that of the trustee, is a breach of trust. (*Estate of Richmond,* 9 Cal.App. 402 [99 P. 554].)

The findings are that the trustee commingled funds and that such fact was not disclosed by his accounts; that his retention of funds ''has never been passed upon nor authorized nor approved by this Court''; that the renewal of certain notes was a breach of trust; that other clients, co-owners of securities in the trust, were preferred to the trust estate. Specifically, the court found ''that respondent Trustee did, subsequent to February 18, 1931, represent to petitioner that the Ruge, Rogan and Pearson loans were safe investments and that they were collectible; that the respondent Trustee did, subsequent to February 18, 1931, discourage petitioner from making any effort to enforce collection of the Ruge, Rogan and Pearson notes and did lull her into a false sense of security with regard to said investments; and did by virtue of his trust and by means of his confidential relationship in divers ways subsequent to February 18, 1931, influence and

dissuade the petitioner by false and fraudulent representations from contesting or questioning before the Court any proceedings had or made by said Trustee, and from contesting before this Court the said acts and conduct of said Trustee until more than six months after February 18, 1931.'' These findings refer to a period subsequent to the filing of the final account, even as late as 1934 when the trustee permitted an action on one of the notes to become barred by the statute of limitations.

It is not necessary to discuss the evidence other than as related herein. The appellant does not attack the findings and impliedly agrees that the evidence is sufficient to support the findings, at least to the extent that ''the trustee was guilty of misfeasance.''

The problem in this case is not concerned with jurisdiction over matters previously determined by decree but with the question of continued jurisdiction over a trustee who concealed or misrepresented certain matters and who, after a period of years and while he was still trustee, filed a supplemental account. The present proceedings continued to be in probate as the trustee had never been discharged.

Appellant contends that the handling by the trustee of the securities of the estate subsequent to the approval of his first and second accounts was by virtue of a personal contract between the beneficiary and himself. The trial court found to the contrary. This finding must be upheld. Their dealings took place while the trust relationship existed. In *Smith* v. *Fidelity & Deposit Co.*, 130 Cal.App. 45, 56 [19 P.2d 1018], the court said: '' 'It would seem that the agreement came within the terms of the statute, which says that all transactions between the trustee and his beneficiary during the existence of a trust are presumed to be entered into by the latter without sufficient consideration and under undue influence.' ''

While the petition prays that the two previous accounts be set aside, the order appealed from does not in fact set aside those decrees, but surcharges the trustee on his supplemental account.

The judgment and decree provide that the petition of the trustee for settlement of the supplemental account be denied and that the accounts of H. Ray Fry as trustee be surcharged in the amount of $7,171.46. It is further ordered

that the trustee distribute the said sum to petitioner as the beneficiary of the Evans trust. It is also ordered that the estate recover the designated amount from H. Ray Fry individually, but no provision is made for execution against him personally. In *Willson* v. *Security-First Nat. Bk.*, 21 Cal.2d 705, 712 [134 P.2d 800], the court said: "It is true that the court sitting in probate, although determining the extent of the individual liability of the trustee, may not render a personal money judgment against him upon which execution may be had. (*Estate of McLellan*, 8 Cal.2d 49 [63 P.2d 1120]; *Costa* v. *Superior Court*, 137 Cal. 79 [69 P. 840]; *Estate of Rey*, 31 Cal.App.2d 648 [88 P.2d 718].) But the probate decree may be enforced by appropriate means, as by contempt if the trustee is able to pay, or by an action at law based on the probate decree, in like manner as an order settling accounts and for final distribution in the estate of a decedent may be made the basis of contempt proceedings or an action at law. (11B Cal.Jur. § 1148, p. 617; see, also, §§ 1310-1312, pp. 818-821, citing cases; § 1021, Prob. Code.)"

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 6, 1944.