[S. F. No. 17642.   In Bank.   May 25, 1948.]

WELLS FARGO BANK & UNION TRUST CO., as Trustee, etc., Petitioner, v. THE SUPERIOR COURT OF MARIN COUNTY, Respondent.

(1)

Heller, Ehrman, White & McAuliffe, Casper W. Weinberger and A. J. Treat for Petitioner.

Thelen, Marrin, Johnson & Bridges and Gordon Johnson for Respondent.

TRAYNOR, J.—Petitioner as trustee of a trust known as the "Robbins Foundation" has petitioned this court for a writ of mandamus to compel respondent court, sitting as a probate court, to hear and determine a petition for an order confirming the sale of an interest in certain land that was distributed to the trustee under the will of Frederick Averill Robbins. The question before this court is whether the probate court has jurisdiction to hear the petition for confirmation of the sale of this interest in the land.

In 1916, Frederick Averill Robbins transferred certain property in trust to the Union Trust Company of San Francisco, predecessor of the Wells Fargo Bank and Union Trust Company, by a trust agreement under the terms of which the trustee was to use the income from the property to establish scholarships for certain students of the mechanical arts. The trust instrument provides that "The property constituting said fund shall be invested and reinvested by my trustee as in its discretion may seem to be for the best interests thereof . . . and my trustee shall also have full power and authority, subject only to confirmation of court, to sell the property composing said trust or fund. . . ."

The trustor reserved the power of modification, and he made several modifications providing for the use of the income for certain charitable purposes, including the payment of part of the income to the "Board of Governors, Shriners Hospital for Crippled Children at San Francisco." Under the terms of the trust as last amended on March 6, 1931, the trust was to be known as the "Robbins Foundation," and the Wells Fargo Bank was named trustee. The trustor also directed in the 1931 amendment that "upon my death the entire net income from said trust as established by me in my lifetime, or increased by me, under the provisions of my Will, be paid over annually to the Board of Governors, Shriners Hospital for Crippled Children at San Francisco."

On the same day, the trustor also executed a will in which he named the Wells Fargo Bank as executor and left certain property to the bank as trustee for two other charitable trusts, one for the benefit of the First Presbyterian Church of Sausalito and the other for the benefit of the Women's Club of Sausalito. In addition the will provided for a bequest to the Wells Fargo Bank as trustee of the "Robbins Foundation" of an amount sufficient to increase the corpus of that trust to $200,000. After the death of the trustor, this will was admitted to probate and on January 26, 1934, an amended decree of distribution was filed distributing certain real and personal property, including the land involved in the present proceeding, as follows:

"To the WELLS FARGO BANK & UNION TRUST Co., a corporation, as Trustee under a certain trust created by FREDERICK A. ROBBINS during his lifetime and now designated as the ROBBINS FOUNDATION . . . an undivided interest equal to 54.828%. . . .

"To the WELLS FARGO BANK & UNION TRUST Co., a corporation, as Trustee for the uses and purposes in paragraph THIRTEENTH of said Will . . . an undivided interest . . . equal to 30.115% thereof, to have and to hold the same for the benefit of the Trustees of the First Presbyterian Church of Sausalito, Marin County, California; to invest and reinvest, or exchange . . . with full power and authority during the continuance of the trust to sell or exchange any part or portion of the securities at any time composing said fund. . . .

"To the WELLS FARGO BANK & UNION TRUST Co., a corporation, as Trustee for the uses and purposes hereinafter set forth . . . an undivided interest . . . equal to 15.057% thereof, to have and to hold the same in trust for the uses and purposes as follows:

"To invest and reinvest, or exchange, . . . with full power and authority during the continuance of this trust to sell or exchange any part or portion of the securities at any time composing said fund . . . and to dispose of and distribute said trust fund and the proceeds thereof . . . to the WOMEN'S CLUB OF SAUSALITO" for certain specified purposes.

On November 19, 1946, petitioner, "as trustee of the trusts created by the last will and testament of Frederick Averill Robbins" filed in respondent court a report of sale and a petition for an order confirming the sale of the real property in question together with a petition for instructions to the

trustee under section 1120 of the Probate Code. In the report of sale and petition for confirmation thereof it was alleged that the property had been sold ·by the petitioner, as trustee of the three trusts, "subject to the confirmation of Court." The trustee alleged in the petition for instructions that the trustee was uncertain whether under the terms of the decree of distribution with respect to the trusts for the benefit of the Women's Club and the Presbyterian Church the trustee had power to sell the real property. The court heard the petition for instructions and determined that petitioner as trustee of the Women's Club trust and the Presbyterian Church trust had power to sell the interest of said trusts in the real property pursuant to the decree of distribution without confirmation of sale by the court. The court, however, dismissed for lack of jurisdiction the petition for an order confirming the sale of the interest of the "Robbins Foundation," on the ground that the foundation is not a trust created by will.

Probate Code, section 1120 provides that "When *a trust created by will* continues after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall *retain jurisdiction for the purpose* of determining to whom the property shall pass and be delivered upon final or partial termination of the trust, to the extent that such determination is not concluded by the decree of distribution, of settling the accounts and *passing upon the acts of the trustee* and for the other purposes hereinafter set forth." (Italics added.) Although the probate court has broad powers under this section over the acts of the trustee of a trust created by will (see *Estate of Smith*, 4 Cal.App.2d 548, 552 [41 P.2d 565]; *Estate of Smead*, 12 Cal.2d 20, 24 [82 P.2d 182]), its jurisdiction over trusts after distribution is limited to trusts created by will. Except for the statute, the superior court, sitting as a probate court, would have no jurisdiction over trusts after the final decree of distribution (*Estate of McLellan*, 8 Cal.2d 49, 55-56 [63 P.2d 1120]), and the statute provides for such jurisdiction only when the trust has been created by will. The question arises therefore whether the petitioner as trustee of the "Robbins Foundation" held the interest distributed to it for the benefit of the foundation as a trustee of a trust created by will or as a trustee of an *inter-vivos* trust.

Jurisdiction of the probate court over the sale of this interest in the real property cannot be sustained on either of the two theories advanced: (1) that the whole of the "Robbins Foundation" trust was incorporated by reference into the will and thus after the trustor's death became a trust created by will; or (2) that the property distributed to the trustee of the "Robbins Foundation" under the trustor's will constitutes the corpus of a testamentary trust separate from the "Robbins Foundation" trust created by *inter-vivos* agreement.

In regard to the first theory, the question is not whether such an incorporation would be valid (See *Estate of Willey,* 128 Cal. 1, 8 [60 P. 471]; cases collected 45 A.L.R. 843; 21 Cornell L. Q. 492), for that question, if pertinent, should have been determined during the probate proceeding. The question is whether the will or the decree of distribution provided for such an incorporation. The doctrine of incorporation by reference cannot be applied without some showing that the testator intended to incorporate the non-testamentary document into his will. (*In re McCurdy's Estate,* 197 Cal. 276, 285 [240 P. 498]; see, 1 Page on Wills, § 263; Atkinson on Wills, p. 336.) In carrying out the general intention of the testator and the policy of the law against intestacy (see Prob. Code, § 102) some courts interpret a reference to nontestamentary documents as indicative of an intention to incorporate by reference certain otherwise inoperative nontestamentary instruments into the testator's will. (*Arrington* v. *Brown,* 235 Ala. 196 [178 So. 218, 220]; *Estate of Dimmitt,* 141 Neb. 413, 425 [3 N.W.2d 752, 144 A.L.R. 704, 717], 41 Mich.L.Rev. 751, 752.) No problem of invalidity or intestacy, however, is presented in the present case, and there is no reason for applying the doctrine of incorporation by reference in the absence of some showing that it would be in accord with the testator's intention. In many cases the trustor of an express trust may deem it inexpedient to incorporate the whole trust into his will. The trustor in the present case, for example, may have been advised that "The incorporation in a will of the terms of an independent trust is entirely gratuitous and may result in throwing the corpus of the trust into the general estate disposed of by the will, thereby unnecessarily subjecting the corpus of the trust to administration under the will with attendant administration costs and attorney's fees. . . ." (Rappoport, Integrat-

ing Instruments of Disposition, 78 Trusts and Estates 571, 577.)

It is neither necessary nor proper to apply the doctrine of incorporation by reference to a valid and operative *inter-vivos* trust when the trustor, as in the present case, expressed no intention in the will or in the *inter-vivos* trust instrument that the latter be incorporated into the will. The expressed intention of the trustor in both documents was contrary to the theory that he intended to incorporate the trust into his will. He provided in the 1931 amendment to the *inter-vivos* trust, on the same day that he executed his last will, for the disposition of the income from the "Robbins Foundation" trust, "as *established* by me *in my lifetime or increased* by me *under* the provision of *my will.*" (Italics added.) In his will he provided as follows:

"During my lifetime I have established a certain trust fund . . . now designated as 'ROBBINS FOUNDATION.' Said trust fund and the earnings thereof are to be used by the said WELLS FARGO BANK & UNION TRUST CO. OF SAN FRANCISCO, a corporation, the trustee herein named, for certain uses and benefits in the declaration of trust establishing the same designated. It is my *purpose and intent that the corpus of said fund* be in amount TWO HUNDRED THOUSAND ($200,000.00) DOLLARS, and I hereby *bequeath a sufficient amount of my estate to make up the difference* between said sum of $200,-000.00 and the value at the time of my death of all securities and properties which, in my lifetime, I may have set-over and placed in said fund." (Italics added.)

Any doubt that might remain as to the intention of the trustor as expressed in his will, has been resolved by the probate court in its amended final decree of distribution wherein the court ordered that there be distributed to "the WELLS FARGO BANK & UNION TRUST CO., a corporation, as Trustee under a certain trust *created* by FREDERICK A. ROBBINS *during his lifetime* and now designated as the ROBBINS FOUNDATION the sum of $38,557.60 in cash and also an undivided interest equal to 54.828% of the other assets of the estate hereafter more particularly described and inventoried [including the land in question]." (Italics added.) Moreover, the decree did not describe the beneficiary of the trust, the purpose of the trust or the disposition of the foregoing assets after their distribution to the trustee, but with respect to the trusts clearly created by will, the decree specifies the beneficiaries

of the trusts, the trust purposes, and the disposition of the assets distributed to the trustee.

Petitioner contends that there was no reason for the probate court to determine at the time of the decree of distribution whether or not the trust was *inter-vivos* or testamentary in character and that therefore the decree should not be considered determinative of this issue. It was the duty of the probate court, however, to determine at the time of the decree of distribution the existence and validity of any trust created by will and the extent of any interest that could pass to the trustee under that will. (*Cook* v. *Cook*, 17 Cal.2d 639, 652 [111 P.2d 322]; *Estate of Loring*, 29 Cal.2d 423, 427 [175 P.2d 524]; *Estate of Easter*, 24 Cal.2d 191, 194 [148 P.2d 601].) At the time of the decree the probate court must distribute the estate "to the persons entitled thereto" (Prob. Code, § 1020) and in the decree it "must name the persons and the proportions or parts to which each is entitled. . . ." (Prob. Code, § 1021.) To determine the persons entitled to distribution and the extent of their interests it was the duty of the probate court to interpret the will and determine whether the *inter-vivos* trust agreement was part of the will. If it had determined that the *inter-vivos* trust agreement was intended to be incorporated into the will and that the whole trust was thus created by the will, it would have been necessary for the court to determine the validity of that trust as a testamentary trust and the effect, if any, of section 41 of the Probate Code on the property that had been transferred by the trustor before his death. (*Estate of Loring*, 29 Cal.2d 423, 431 [175 P.2d 524]; see *Rutherford* v. *Ott*, 37 Cal.App. 47, 51 [173 P. 490].) By determining that the trust was created by *inter-vivos* agreement, it precluded consideration of that question to the extent that the property had been transferred by the trustor under the *inter-vivos* agreement. The court was concerned primarily with the questions of the identification of the distributee and the capacity of the distributee to take under the will. (See *Swetland* v. *Swetland*, 102 N.J.Eq. 294, 297 [140 A. 279]; *In re Rausch's Will*, 258 N.Y. 327, 331 [179 N.E. 755, 80 A.L.R. 98].)

It is apparent that the probate court did consider the question of the nature of the "Robbins Foundation" trust and found that it was an *inter-vivos* trust and that it was unnecessary to consider the validity and purposes of the

trust, for, as already has been observed, the decree designates the trust as an existing *inter-vivos* trust and fails to specify the beneficiaries, purposes, or disposition of the assets distributed to it, although those matters are specified in detail in the decree with respect to the two charitable trusts that were created by will. This decree is, therefore, "conclusive as to the rights of heirs, devisees and legatees" (Prob. Code, § 1021) and, as a devisee and legatee the trustee is clearly bound by the decree with respect to the "existence, validity of and rights under any testamentary trust, and the incidental matters which necessarily are involved in a determination on those subjects. . . ." (*Cook* v. *Cook, supra,* 17 Cal.2d at 652; see also *Estate of Loring, supra,* 29 Cal.2d at 431; *Estate of Easter, supra,* 24 Cal.2d at 194.)

The other theory on which the petitioner relies to show jurisdiction in the probate court is that the property distributed to the trustee of the "Robbins Foundation" constitutes the corpus of a separate testamentary trust and, as such, is a trust created by will within the purview of section 1120 of the Probate Code. Respondent's contention is that the will and decree of distribution provide for a testamentary transfer of certain property to an already existing *inter-vivos* trust and that the whole of the "Robbins Foundation" is therefore one trust to be administered as a unit.

Ordinarily, when a trustor of an *inter-vivos* trust provides in the trust instrument for additions to the trust by will and provides in his will for a gift to the trust, his intention is to authorize the trustee "to deal with the whole property as a unit. The only possible difficulty would arise in states in which different courts have jurisdiction over testamentary trusts and trusts created *inter-vivos*. At common law, however, a court of equity had jurisdiction over all trusts, and in many states today courts of probate are given jurisdiction over both kinds of trusts." (1 Scott on Trusts p. 293.) In those states in which testamentary and *inter-vivos* trusts are subject to the jurisdiction of different courts, there is no clear authority on the question of whether one or both have jurisdiction over this type of trust; however, "such meagre authority as exists points to equity, rather than probate, as the forum having jurisdiction over the combined fund." (1 Nossaman, Trust Administration and Taxation, pp. 603, 105, citing the unreported case of *New York Trust*

*Co.* v. *Rausch,* decided by the New York Supreme Court in 1938.)

In the present case it is evident from the trust agreement and the will that the trustor intended the "Robbins Foundation" to be a single trust administered as one unit rather than as two trusts administered as two units. He provided in the 1931 amendment to the *inter-vivos* trust agreement that "upon my death the entire net income from said trust as established by me in my lifetime, or increased by me, under the provisions of my Will, be paid over annually to the Board of Governors, Shriners Hospital for Crippled Children at San Francisco." The will evinces the same intent, for the trustor there provided that "It is my purpose and intent that the corpus of said fund be in amount Two HUNDRED THOUSAND ($200,000.00) DOLLARS, and I hereby bequeath a sufficient amount of my estate to make up the difference. . . ." The decree of distribution likewise indicates that at the time of the decree the probate court determined that the property should be distributed to the trustee of the foundation to be administered as a single trust, for the property in question was distributed to "the WELLS FARGO BANK & UNION TRUST Co., a corporation, as Trustee under a certain trust created by FREDERICK A. ROBBINS during his lifetime."

The question whether the trustor has created one trust or more than one trust depends primarily on the expressions of his intention in the trust instruments. (*Huntington Nat. Bank* v. *Commissioners,* 90 F.2d 876, 878; *U. S. Trust Co.* v. *Commissioner,* 296 U.S. 481, 487 [56 S.Ct. 329, 80 L.Ed. 340]; *Parkhurst* v. *Ginn,* 228 Mass. 159, 166 [117 N.E. 202]; *Industrial Trust Co.* v. *Harrison,* 67 R. I. 131, 146 [21 A.2d 254, 135 A.L.R. 1312]; cases collected 102 A.L.R. 257 involving application of federal income tax; see also 40 Columb.L.Rev. 309, 310-311.) The question remains, however, whether there is some established principle of law or reason of policy that would justify this court in regarding the "Robbins Foundation" as consisting of two trusts, regardless of the intention of the trustor. Petitioner has not referred to any principle of law that prevents a trustor of an *inter-vivos* trust from increasing the corpus of the trust by bequeathing or devising property for that purpose in his will. At least two jurisdictions that have not accepted the doctrine of incorporation by reference have sustained such gifts to existing

*inter-vivos* trusts as a valid method of increasing an established trust. In *Swetland* v. *Swetland,* 102 N.J.Eq. 294, 296-297 [140 A. 279], the New Jersey court held that such a gift was valid "regardless of what the rule is in New Jersey with respect to the doctrine of incorporation by reference. . . . By it the testator merely added additional property to a trust fund established by him years before the execution of his will under a valid, active trust. . . . The trust to which this bequest is added is not theoretical, nebulous, intangible or incapable of identification, but exists in fact, and the trustee-legatee is as distinct and definite an entity as would have been an individual or corporation legatee." The New York Court of Appeals in *In re Rausch's Will,* 258 N.Y. 327, 330-331 [179 N.E. 755, 80 A.L.R. 98], involving a similar addition to the corpus of an *inter-vivos* trust by will, held that "at the execution of this will there was in existence a valid deed of trust whereby a trustee was under a duty to apply the subject-matter of the grant to uses there declared. All that the later will does is to give additional property to the same trustee to be held in the same way. . . . A gift to a trust company as trustee of a trust created by a particular deed identifies the trust in describing the trustee, like a gift to a corporation for the uses stated in its charter. . . . The legacy when given was not the declaration of a trust, but the enlargement of the subject-matter of a trust declared already." This rule, applicable where the doctrine of incorporation by reference is not accepted, applies for the same reasons to a gift to an existing trust that the trustor did not intend to incorporate into his will.

No reason of policy has been suggested why this court should regard the foundation as two separate trusts contrary to the expressed intention of the trustor. ██ Petitioner contends that since the two other charitable trusts referred to in the will are clearly testamentary trusts "the probate court alone has jurisdiction over these two latter trusts" and an "anomalous situation would arise if the Robbins Foundation trust is held to be *inter-vivos* and outside the jurisdiction of the probate court, for then 55% of the Robbins house will be under the jurisdiction of the Superior Court in the exercise of its general equitable jurisdiction while 45% of the same house will be under the jurisdiction of the probate court." The contention that the probate court alone has jurisdiction of the testamentary trusts would certainly not support a decision

holding the foundation to be two separate trusts, one *intervivos* and the other testamentary, for if this contention is sound, an anomalous situation would arise with respect to the future administration of the foundation, with part of its assets subject to the jurisdiction of one court and part subject to another. If the trustee should fail to keep the assets separate it would apparently be necessary for the trustee to seek the approval of two courts every time it sought to exercise its power of sale with respect to those assets. The trustor clearly did not intend such result in creating the Robbins Foundation or in providing in his will for an addition to its assets.

In any event, petitioner's contention is without merit, for the probate court was not the only court that could have jurisdiction to approve or disapprove the entire transaction. Since the jurisdiction over trusts conferred on a court sitting as a court of probate is limited to testamentary trusts, and the jurisdiction of a court having general equity powers is much broader, petitioner's remedy under the circumstances was to seek relief in a court of equity having jurisdiction to settle the entire controversy. In the absence of Probate Code, section 1120 all trusts, after distribution, would be subject to the jurisdiction of the superior court, not sitting as a court of probate (*Estate of McLellan, supra,* 8 Cal.2d 49, 55-56) and that court, at least, retains residual jurisdiction over trusts not within the jurisdiction of a probate court. Whether or not in a situation involving testamentary trusts alone, the jurisdiction "conferred on the court sitting in probate by section 1120, Probate Code, *supra,* is exclusive or is concurrent with the exercise of jurisdiction sitting in equity" (*Willson* v. *Security First-Nat. Bank,* 21 Cal.2d 705, 712 [134 P.2d 800], collecting cases; see also, *Dowdall* v. *Superior Court,* 183 Cal. 348, 353 [191 P. 685].), where the probate court lacks jurisdiction to determine an issue involving both testamentary and nontestamentary trusts, it is proper "for the superior court not sitting in probate to take jurisdiction of it and fully determine the controversy." (*McCaughna* v. *Bilhorn,* 10 Cal.App.2d 674, 684 [52 P.2d 1025]; see also *Howard* v. *Bennett,* 53 Cal.App.2d 546, 548 [127 P.2d 1012].)

The petition for a peremptory writ of mandamus is denied and the alternative writ is discharged.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.