[Civ. No. 49123. First Dist., Div. One. Jan. 21, 1982.]

Estate of ABRAHAM L. GUMP, Deceased.
WELLS FARGO BANK, as Trustee, etc., Petitioner and Appellant, v.
ROBERT L. GUMP et al., Objectors and Appellants.

**COUNSEL**

Max Gutierrez, Jr., Eric W. Jorgensen, James W. Morando and Brobeck, Phleger & Harrison for Petitioner and Appellant.

Alvin H. Goldstein, Jr., B. Suzanne Farley and Goldstein & Phillips for Objectors and Appellants.

**OPINION**

**RACANELLI, P. J.**—Appellant Wells Fargo Bank, N.A., the then duly designated testamentary trustee (Trustee) of several trusts created under the will of decedent, Abraham L. Gump,[1] appeals from that part of the judgment settling its eighth annual account partially disallowing its requested compensation on the basis of the Trustee's negligent mismanagement of certain trust assets. Respondents, five of the six trust beneficiaries who objected to the account below, cross-appeal from the order denying their related request for attorney and accountant fees.

FACTS

We recite the relevant facts: The assets administered under the terms of the trusts consisted of (1) a 60.41 percent interest in real property at 250 Post Street leased to the venerable San Francisco business firm known as Gump's retail store; (2) a 60.41 percent interest in mineral rights on certain property situated in Kern County; and (3) securities and cash having an aggregate value in excess of $2 million. The rental income derived from the 250 Post Street lease, generating approximately 70 percent of the trust income, consists of an annual base rent of $350,000, plus 4 percent of the lessee's gross sales. Under the terms of the lease, gross sales include all mail order sales and catalogue order sales other than those originating outside the San Francisco trading area. Sales attributable to the businesses conducted in the separately

---

[1] A successor trustee has since been appointed.

leased 278 Post Street annex (furniture sales, fashion department, and a framing shop)[2] are likewise excluded in computing the override rental calculation. A fixed allowance from gross sales is also provided for uncollectible receivables.

The finding of Trustee's negligence was based upon evidence consisting of certain erroneous sales figures reported by the lessee, unaccounted and potentially includable catalogue mail order sales, an overstated amount of excludable annex sales (approximately $45,000 of the reported sales aggregating nearly $785,000 from the furniture and fashion departments) and the undocumented allocation between the two stores of the frame shop sales. The evidence further disclosed that the excluded bad debts allowance was overstated to the extent of approximately $15,000. Trustee, while conceding fault in its failure to obtain an accurate account of gross sales, contends that the undetected reporting errors were of little practical consequence since the magnitude of the combined errors would not have justified the cost of an independent audit at the expense of the trust.[3] Trustee's request for compensation in the amount of $32,689 was based upon a probate schedule or guidelines promulgated by the court.[4] At the conclusion of the hearing, the court found the Trustee guilty of negligence *only* in administering the lease on the 250 Post Street property and disallowed $22,689 of the requested compensation. The amount disallowed ($15,373 referable to the Post Street lease plus an additional $7,316) is directly proportionate to the amount of trust income derived from the rental property, an approach strongly urged by respondents.[5]

---

[2]The framing shop actually occupied equal floor space in both stores.

[3]Under related provisions of the lease, auditing costs are borne by the lessee only if the discovered error exceeds 3 percent of gross sales ($11 million). Thus, Trustee argued, since the total amount of erroneous exclusions as shown by the evidence was considerably below the threshold figure of $330,000, the trust would have been saddled with the expense of the audit.

[4]The requested amount of compensation was computed as follows:

For services relating to:

| | |
|---|---|
| 250 Post Street | $15,373 |
| Kern County mineral rights | 300 |
| Nonreal property | 17,016 |
| Total | $32,689 |

[5]Although the record does not reveal the method of computation used by the court, we note respondents requested disallowance of 70 percent of the requested compensation on the ground that the rental property generated 70 percent of the trust income.

CONTENTIONS

On appeal, Trustee makes the following contentions: (1) Assuming negligence in administering the 250 Post Street lease, it was nonetheless entitled to reasonable compensation for services rendered in managing trust property unrelated to the collection of leasehold rental; (2) since there was no evidence of mismanagement of other trust assets, disallowance of compensation relating to those trust assets was unwarranted; and (3) the amount disallowed is unsupported by any evidence or finding of resultant loss to the trust estate. We examine those contentions in the order stated.

■ It is a cardinal principle of probate administration that where the will does not otherwise provide, a trustee is entitled to reasonable compensation for services rendered as determined by the probate court whose exercise of discretion will not be disturbed in the absence of manifest abuse. (Prob. Code, § 1122; see *Estate of McLellan* (1936) 8 Cal.2d 49 [63 P.2d 1120]; *Estate of Cassity* (1980) 106 Cal.App.3d 569, 572 [165 Cal.Rptr. 88]; *Estate of Nazro* (1971) 15 Cal.App.3d 218, 221 [93 Cal.Rptr. 116]; see generally 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, §§ 79-80, pp. 5439-5441.) While the court may properly consider comparable or customary charges within the private sector based upon a percentage of the value of the administered trust assets, it is not obliged to do so and is free to consider other relevant factors including—inter alia—the success or failure of the trustee's administration of the trust. (*Estate of McLellan, supra,* 8 Cal.2d at p. 55; *Estate of Nazro, supra,* 15 Cal.App.3d 218, 221-222.) ■ The scope of judicial supervision of a trustee's standard of performance (see Civ. Code, § 2259) includes continuing jurisdiction to settle periodic accounts and to pass upon the acts of the trustee (Prob. Code, § 1120) enabling settlement of "virtually all controversies that might arise between trustees and beneficiaries, including matters of trustee misconduct." (*Estate of Howard* (1976) 58 Cal.App.3d 250, 257 [129 Cal.Rptr. 836] and cases there cited.) Although the probate court has no authority to assess damages against a negligent trustee (*Willson v. Security-First Nat. Bk.* (1943) 21 Cal.2d 705, 712 [134 P.2d 800]), it is empowered to charge the trustee for shortages including denial of all or part of the trustee's claim for compensation (*Estate of McLellan, supra,* 8 Cal.2d at p. 55; *Estate of Cassity, supra,* 106 Cal.App.3d at pp. 572-574; *Estate of Prior* (1952) 111 Cal.App.2d 464, 471 [244 P.2d 697]; see also Rest.2d Trusts, § 243, p. 612.)

■ In view of the undisputed finding of negligence relating to the management of the 250 Post Street trust asset, the court could in the exercise of its discretion properly deny compensation for services rendered in conjunction with the mismanaged trust asset. (Cf. *Estate of McLellan, supra*, 8 Cal.2d 49.) But, the record fails to disclose the evidentiary basis for the court's disallowance in an amount greater than that attributable to the mismanaged lease resulting in a partial allowance of $10,000 as compensation (see *Estate of Feraud* (1979) 92 Cal.App.3d 717, 723 [154 Cal.Rptr. 889]) and an apparent surcharge of $7,300. ■ Where it is shown that the trustee neither acted fraudulently nor personally benefited from its negligence, the measure of the trustee's liability is generally limited to the amount of loss actually suffered by the trust beneficiaries. (Civ. Code, § 2238; *Estate of Talbot* (1956) 141 Cal.App.2d 309, 322-327 [296 P.2d 848, 58 A.L.R.2d 658].)[6] ■ Thus we conclude that in the absence of evidence supporting an implied finding of actual loss, the additional surcharge cannot be justified. (Cf. *Estate of Feraud, supra*, 92 Cal.App.3d 717, at p. 723.)[7]

CROSS-APPEAL

■ Respondents pursue their cross-appeal from the order denying attorney (and accountant) fees on two theories: (1) as damages proximately resulting from Trustee's negligence (cf. *Mustachio v. Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358, 363-364 [118 Cal.Rptr. 581]); and (2) under a "common fund" derived from the preservation of distributable assets consisting of the disallowed portion of Trustee's claimed compensation. (See generally *Serrano v. Priest* (1977) 20 Cal.3d 25, 34-35 [141 Cal.Rptr. 315, 569 P.2d 1303]; cf. *Estate of Gopcevic* (1964) 228 Cal.App.2d 280 [39 Cal.Rptr. 482]; *Estate of Lundell* (1951) 107 Cal.App.2d 463 [237 P.2d 62] [common fund theory applied to fund derived from disallowed excessive attorneys' fees].) We conclude that neither theory is applicable herein.

---

[6]We do not question the court's conclusion concerning its inability to compute the amount of lost rents for the calendar year 1976 as a result of Trustee's failure to properly monitor and maintain adequate records. However, we are aware that the alleged loss—inter alia—is the subject of independent litigation pending between the parties hereto.

[7]Parenthetically, we note Trustee's claim that evidence of the estimate of unaccounted sales adequately established a range of error which—after applying the percentage override—would have resulted in a maximum rental income loss of approximately $3,000.

It is the general rule that absent contractual or statutory authorization, attorney's fees are not recoverable either as damages or costs and must be borne by the respective parties. (Code Civ. Proc., § 1021; *Davis v. Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 5 [148 Cal.Rptr. 419, 582 P.2d 1010]; *Serrano v. Priest, supra,* 20 Cal.3d 25, 34; *Mustachio v. Ohio Farmers Ins. Co., supra,* 44 Cal.App.3d 358, 363.) Respondents' attempt to find support within the limited exceptions indemnifying an insured for all detriment, including reasonable attorney fees, occasioned by the insurer's tortious violation of its implied covenant of good faith and fair dealing (see, e.g., *Mustachio v. Ohio Farmers Ins. Co., supra,* 44 Cal.App.3d at p. 363; *Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 401-402 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]) is misguided.

Unlike the foreseeable detriment sustained by the injured party in insurance cases as a result of the breach of an implied contractual duty sounding in tort, respondents' claim for attorney fees is no more foreseeable than that of an ordinary litigant seeking relief against a general tortfeasor. (See *Olson v. Arnett* (1980) 113 Cal.App.3d 59, 68 [169 Cal.Rptr. 629]; *Twentieth Century-Fox Film Corp. v. Harbor Ins. Co.* (1978) 85 Cal.App.3d 105 [149 Cal.Rptr. 313].) No sound reason is discovered to extend arbitrarily that principle of recovery to a probate dispute grounded upon a trustee's negligent mismanagement of trust assets.

Nor do the equities herein compel relief under the common fund doctrine. In the first instance, application of the doctrine is committed to the sound discretion of the court. (See *Hutchinson v. Gertsch* (1979) 97 Cal.App.3d 605, 615-617 [159 Cal.Rptr. 40]; *Estate of Gopcevic, supra,* 228 Cal.App.2d 280.) Moreover, the theory underlying the doctrine is based upon the common preservation of assets which benefits a class of nonlitigating interested parties. (See *Serrano v. Priest, supra,* 20 Cal.3d 25, 35; *Estate of Stauffer* (1959) 53 Cal.2d 124, 132 [346 P.2d 748].) Respondents, who benefit *pro tanto* by reason of the disallowed portion, represent five of the six trust beneficiaries; the nonobjecting sixth beneficiary (Antoinette Williams) would receive at most an approximate 11 percent interest in the resulting increase in distributable assets. Under such circumstances, we find no abuse in the court's rejection of an award of attorney's fees where the increased assets do not substantially benefit any parties other than the litigators. (Cf. *Estate of Kann* (1967) 253 Cal.App.2d 212, 223 [61 Cal.Rptr. 122].)

The judgment is reversed for further proceedings consistent with the views herein expressed relating to proof of surchargeable losses, if any; in all other respects, the judgment is affirmed. The parties shall bear their respective costs on appeal.

Newsom, J., and Martin, J.,* concurred.

A petition for a rehearing was denied February 18, 1982, and the petition of objectors and appellants for a hearing by the Supreme Court was denied March 17, 1982.

---

*Assigned by the Chairperson of the Judicial Council.