[Civ. No. 19942.   First Dist., Div. Two.   Mar. 15, 1962.]

GLADYS LEE SMITH, Plaintiff and Respondent, v. ROBERT FRANK SMITH, Defendant and Appellant.

Morgan, Beauzay, Holmes & Wines and George R. Hutchinson for Defendant and Appellant.

Orville C. Casteel for Plaintiff and Respondent.

AGEE, J.—Defendant husband appeals from an interlocutory judgment of divorce entered in favor of plaintiff wife. The sole issue is whether the evidence is sufficient to sustain the trial court's finding that the parties intermarried at Tijuana, Mexico, on July 5, 1947. By stipulation of counsel this issue was separated and tried first.

Respondent testified that she and appellant had known each other for a long time before their marriage; that shortly prior to July 5, 1947, they had gone to Los Angeles to take a blood test in order to obtain a California marriage license (Civ. Code, § 79.01) but had arrived at the laboratory after it had closed for the day; that on July 4, 1947, appellant asked her to go to Tijuana and get married; that they drove there the evening of that day; that appellant slept in the car that night and she spent the time sight-seeing; that the next day they went to a place which advertised that marriage ceremonies were performed there, signed some papers written in Spanish, and an official whom she believed to be a justice of the peace performed a marriage ceremony between them; that on the next day, July 6, 1947, they returned to Alhambra, California, where appellant was employed as a carpenter; that after their return they received through the mail, postmarked "Mexico City," a document written in Spanish, which they believed to be a marriage certificate; that the parties lived together as husband and wife until May 3, 1959, when appellant left; that during this entire period of 12 years they held themselves out to everyone as husband and wife and raised three children of appellant and one child of respondent; that their bank account, loans and credit accounts were kept in both names; that she believed that they were married and appellant never indicated that they were not; that they never lived together or had sexual relations with each other prior to their marriage on July 5, 1947; that the last time she saw the marriage certificate it was in the hands of appellant.

Barbara Lee Moore, respondent's daughter, testified that she lived with the parties from time to time from August 1947 to June 1953, when she graduated from high school and obtained employment; that both parties told her that they were married and appellant showed her the marriage certificate; that they held themselves out to everyone as husband and wife and neither ever indicated that they were not married; that she was with them in Las Vegas, Nevada, in July 1948, when they celebrated their first wedding anniversary.

Respondent thereupon rested as to the issue of marriage.

Appellant was his only witness. He testified that he told his employer that he and respondent were going to Tijuana to get married; that the employer gave him $100 and told him to "have a good time"; that he and respondent drove to Tijuana on July 4, 1947, and were married the next day at a place displaying a sign "Marriages performed here"; that he and respondent signed some papers having to do with the marriage; that he paid a fee of $36; that his purpose in going to Tijuana was to get married and that he believed he was being married; that about all he recollects of the ceremony is that a man said, "Do you take this man to be your husband?" and "Do you take take this woman to be your wife?"; that they later received some document in the mail from Mexico which he believed indicated that they were married; that during the period from July 5, 1947, to May 3, 1959, when he left, they lived together as husband and wife and held themselves out to everyone as such.

On cross-examination, respondent's counsel asked appellant whether he was presently married to anyone. His counsel objected, saying: "I am going to object to that, your Honor, because that clearly has no relevancy to this case. We are here to determine whether or not there is a marriage between *these* two parties." (Emphasis supplied.) The objection was overruled and appellant stated that he had married someone else several months after his separation from respondent. When respondent's counsel then attempted to find out who he had married (and obviously he would have followed with other questions) appellant's counsel continued to object and the objection was sustained. Thus, respondent's counsel was prevented from probing the verity of appellant's unsupported statement that he had remarried. Appellant now seeks to use this bit of testimony as a basis for arguing that a second marriage raises a disputable presumption of its validity and

would thus tend to negative the existence of a valid prior marriage. However, at best, such a presumption would only conflict with the evidence as to the existence of the first marriage and any such conflict was resolved adversely to appellant by the trial court's finding that the parties hereto intermarried on July 5, 1947. It should also be kept in mind that, although both parties appeared as witnesses, there was a complete lack of any testimony that either had divorced the other.

Appellant's counsel introduced, without objection, some paper or document, with an accompanying translation, described by him as showing that there was no record of the marriage in question in the "Civil Registry of Tijuana."

The foregoing constitutes a summary of all of the evidence bearing upon the issue in question.

In *Freeman S. S. Co.* v. *Pillsbury,* 172 F.2d 321, a widow received an award under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901, for the death of her husband. One of the issues was whether the proof was sufficient to sustain a finding that the deceased and the awardee were husband and wife. The opinion stated: "There is creditable evidence that, after announcing their intention to their friends, they together went to Tijuana, Mexico, to get married. There they were given a document labeled in Spanish a 'license.' A marriage ceremony was performed for them at a place where people were being married and they returned to California and exhibited the document labeled license, told friends they were married, and lived together in that state continuously. There is evidence that a search of the marriage records of Tijuana failed to show any record of the marriage and a statement of one versed in Mexican law that there is but one place in Tijuana where people could be married. . . . The mere fact that a searcher did not find a record of the marriage together with the fact that after eighteen years the awardee could not find the 'license' does not necessarily outweigh the other evidence. . . . Under the circumstances here shown there is a strong presumption that this was a legal marriage. [Code Civ. Proc., § 1963, subd. 30.]" The court held the marriage to be valid.

In *Estate of Chandler* (1931) 113 Cal.App. 630 [299 P. 110], the issue was whether there was sufficient evidence to uphold the trial court's finding that the deceased husband and his wife were married in Tijuana, Mexico, on November 22, 1909. The wife testified that an interpreter told her at the

time, after certain preliminaries regarding the signing of papers and what was apparently a brief ceremony, that "You are now pronounced man and wife under the Mexican law." The court said: "They [appellants] first rely upon certain evidence that no record could be found that such a marriage took place at Tiajuana in November, 1909. . . . If lack of such official records could be taken as conclusive proof that certain facts did not exist, many men of considerable prominence could be proved to have never been born. While the absence of this record was a fact to be considered by the trial court, it is by no means to be taken as conclusive" (at pp. 634, 635). The marriage was held to be valid.

In *Estate of Crawford* (1945) 69 Cal.App.2d 609 [160 P.2d 65], the court upheld the validity of a marriage under the following facts: "Decedent and respondent were residents of Los Angeles. On or about October 19, 1943, they went to Tiajuana, Mexico. While there decedent went into an office to see if they could get married; when he came out he told respondent they could get married and they both went in. While in the office they signed papers and answered questions put to them by a Mr. Soriano. Decedent paid this man $23, whereupon he told them to stand up, pronounced them man and wife, and congratulated them. Before they left he told them they would get some papers later on. These papers were received by decedent and respondent by mail about two weeks afterward. They were received in evidence and show a proxy marriage in Juarez, Mexico, based upon the appearance of the parties at Tiajuana, and their nomination of proxies. After the marriage the parties returned to Los Angeles and lived together as husband and wife for a short time" (pp. 609, 610). After stating that the facts were similar to those in *Estate of Chandler, supra,* the court held: "In this case, the trial court has adopted the same presumption that there was a valid marriage. There being substantial support of the presumption, this court is without power to set it aside. It therefore becomes unnecessary to consider whether there was error in admitting in evidence the record of the proxy marriage" (pp. 610, 611).

■ Appellant's briefs make reference to secondary evidence of the law of Mexico in support of the contention that the parties could not validly have been married in Mexico at the time and place in question. While the record is devoid of any indication that this material was placed before the trial

court, the respondent's brief indicates that it was brought to the court's attention almost a month after trial of the marriage issue. Section 1875 of the Code of Civil Procedure provides that to enable a party to ask that judicial notice be taken of foreign law, ". . . *reasonable notice shall be given to the other parties to the action in the pleadings or otherwise*" (emphasis added). This provision was enacted in 1957. (Stats. 1957, ch. 249, p. 902, § 1.) The report of the California Law Revision Commission, in recommending enactment, noted that some provision should be made for notice to the court and the parties that the law of a foreign country is thought applicable and will be relied upon, concluding: "When the law of a foreign country, rather than the law of a sister state, is involved, it is even more necessary that both court and counsel be required to give reasonable notice that such law will be relied upon. Opposing counsel would rarely be able to assert from his general knowledge that the law of a foreign country on the specific point involved is not as stated by the party relying upon it. Extensive research would almost always be necessary. Without a requirement of notice, the danger of surprise would appear to be great." (Cal. Law Revision Comm. (1957) vol. 1, p. I-5, at p. I-20-21.) These considerations apply with particular force to the case at bar. We find merit in respondent's protests, concluding in accordance therewith that we are neither required nor impelled to judicially notice the evidence proffered by appellant. The court in *People* v. *DeCasaus* (1961) 194 Cal.App.2d 666, 675 [15 Cal.Rptr. 521), was of the same opinion.

We conclude that there was substantial evidence to support the trial court's finding, in the instant case, that the parties intermarried on July 5, 1947, at Tijuana, Mexico.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred