[Civ. No. 30590.   Second Dist., Div. One.   Aug. 4, 1967.]

Estate of EDWARD KANN, Deceased. MARGARET KANN, as Executrix, etc., Petitioner and Appellant, v. HARRY FISHER et al., Objectors and Respondents.

Watson G. Thoms for Petitioner and Appellant.

Sam Schermer for Objectors and Respondents.

WOOD, P. J.—This is an appeal from an order sustaining objections by Henry Fisher and Ilse Boros, who are assignees of Charlotte Fischer (sister of decedent), to the first and final account, report, and petition for distribution and allowance of attorney fees filed by Margaret Kann, the executrix of the will of Edward Kann, deceased. The order in part directs the executrix to file an amended account and petition including therein certain securities which the executrix (wife of decedent) contended were held by the decedent and herself as joint tenants. The order also awards attorney fees to the objectors' attorney, payable from the estate. Defendant's notice of appeal states that the executrix appeals from the judgment (order) entered on September 20, 1965.

Appellant contends that the court erred in ordering the inclusion of the securities in the account in that (1) the objectors had the burden of proving that the securities were not joint tenancy property, and the objectors did not meet that burden, (2) if petitioner had the burden of proving that the securities were joint tenancy property, then petitioner met that burden. Appellant also contends that the court erred in finding that the securities were quasi-community property under section 201.5 of the Probate Code; erred in construing, as a specific bequest, a bequest of 25 percent of the decedent's estate to his brother and sister; and erred in awarding attorney fees to the objector's attorney, payable from the estate.

Petitioner and the decedent were married in Vienna, Austria, in 1913, and resided in China from 1913 to 1947, when they moved to the United States. While they resided in China, and until they became citizens of the United States in 1956 (decedent) and 1958 (petitioner), they retained their Czechoslovakian[1] citizenship, and they did not become citizens of China.

The decedent died on July 30, 1962, at which time his domicile was California. His will (admitted to probate) nominates Margaret Kann as executrix, and disposes of the "net assets" of his estate as follows: (1) The sum of $5,000 to Peter Gerald Arnovich. (2) The sum of 25 percent of the "net estate" in equal parts to his brother, Alfred Kann, and

---

[1]Petitioner testified that she and the decedent were born in Austria, but that the place where he was born "then became Czechoslovakia." When asked whether they retained their Austrian citizenship, she testified: "Yes. Our citizenship then was Czechoslovakian." She also testified that they remained citizens of Czechoslovakia until they became citizens of the United States. Apparently, the Czechoslovakian citizenship derived from the partition of the Austrian Empire in World War I.

to his sister, Mrs. Charlotte Fischer. (3) All of the residue of the estate to his wife, Margaret Kann. The will also provides that all specific bequests shall be made free of any state or federal estate or inheritance taxes, and that such taxes shall be paid from the residue.

On August 30, 1962, Charlotte Fischer assigned all of her right, title, and interest in the estate to Harry Fisher and Ilse Boros.

On August 7, 1964, Margaret Kann, as executrix, filed a first and final account, report, and petition for distribution and for allowance of attorney fees.[2] The account listed the value of the assets of the estate (not including securities) at $78,019.61 and the expenses of administration at $13,535.34, leaving the estate chargeable for $64,484.27. After deducting requested attorney fees of $3,690.38 from the amount for which the estate is chargeable, and after deducting one-half of the remainder as community property (citing Prob. Code, § 201), the proposed distribution of the balance ($30,396.95) is as follows: $5,000 to Peter G. Arnovich; one-eighth of $25,396.95, less federal estate and state inheritance taxes thereon, to Alfred Kann, and the same amount (one-eighth of $25,396.95, less taxes) to Charlotte Fischer; and three-fourths of $25,396.95, less such taxes, to Margaret Kann.

Harry Fisher and Ilse Boros filed objections to the account (and petition), claiming in substance that it fails to recognize the assignment of Charlotte Fischer's interest in the estate to the objectors; fails to comply with the provisions of sections 201.5 and 201.7 of the Probate Code by permitting the decedent's wife to take property under the will and against the will; fails to include in the account certain stocks and bonds which were separate property of the decedent, and which were not joint tenancy property as stated in the inventory and appraisement; and erroneously charges estate and inheritance taxes against legacies. A declaration in support of the objections lists the shares of stock and the value of "bearer bonds" which allegedly should have been included in the account as the separate property of the decedent. Another declaration refers to the assignment of Charlotte Fischer's interest to Fisher and Boros, and states that Fisher and Boros have necessarily employed legal counsel to present the objections.

Before witnesses were called at the hearing of the objec-

[2]Said document also included a petition for confirmation of sale of personal property, which petition is not an issue on appeal.

tions, there was argument as to whether the petitioner or the objectors had the burden of proof on the contested issues, and the judge said that he would "resolve that when I have to." The objectors offered the will and the inventory and appraisement in evidence and the judge said he would take judicial notice of "anything in the file."

The objectors then called Margaret Kann as a witness under section 2055 of the Code of Civil Procedure. She testified in substance that she is the executrix of the will and the widow of the decedent; they were married in Vienna in 1913 and resided in China from 1913 to 1947; during that time they retained their Czechoslovakian citizenship and the decedent accumulated the money with which he acquired the assets listed in the inventory and appraisement as "Community Property" (appraised at $74,290.88) and the stocks and bonds listed therein as "Joint Tenancy Property" (appraised at $287,329.63); and that none of her money or property was used to acquire said joint tenancy assets.

Margaret Kann then testified "on her own behalf" in substance that she did not remember whether she and Mr. Kann had signed a document, when they were married in 1913, concerning the property which they would acquire during their marriage.

Watson G. Thoms, the attorney for the executrix, was called as a witness by the objectors under section 2055 of the Code of Civil Procedure and testified in part that, after Mr. Kann had died, he (Thoms) received from White, Weld & Co. (stock brokers) a ledger statement showing that said brokers held certain stocks and bonds in the names of the decedent and Mrs. Kann, and subsequently the stocks were shipped to Mrs. Kann, but the bonds had not been shipped to her. The ledger statement, which lists the stocks and bonds which are referred to in the inventory and appraisement, and a shipping invoice listing the stocks, were received in evidence.

Sam Schermer, attorney for the objectors, testified, over the objection of the executrix, with reference to the services rendered by him for which the objectors claimed attorney fees from the estate.

Mr. Thoms then testified as a witness for the executrix. His testimony, over objection by the objectors, was in substance that he had correspondence with White, Weld & Co., wherein he sought to determine whether there was a joint tenancy agreement regarding the stocks and bonds. In reply, White, Weld & Co. sent him a letter, dated May 20, 1963, which

states that papers in their possession show that the stocks and bonds were held in joint tenancy by Mr. and Mrs. Kann, and that the decedent "undoubtedly signed our form agreement [for joint tenancy account] but it appears to have been lost as no copy of it remains in our files which are not complete for those early years of the account. We suggest that Mr. Kann himself may have a copy of this agreement and that it might be found among his papers." It is also stated that there is enclosed (in letter) "the first ledger sheets" for the account, and letters between White, Weld & Co. and Mr. Kann, "all indicating the registration of the account in joint names with right of survivorship." The letter (of May 20, 1963), and the enclosed documents, were received in evidence over objection by the objectors.

Each of the "first ledger sheets" for the account has at the top thereof, the names "Edward Kann and Mrs. Margaret Kann as Joint Tenants W R S," and the sheets list certain stocks. One of the letters, dated June 9, 1949, from White, Weld & Co. to Mr. E. Kann, refers to an account which is not in the "joint names" of Mr. Kann and his wife, and suggests that Mr. Kann transfer such account "out of" his name. It further states that another account (which apparently included the stocks and bonds at issue herein) is a joint account "entitled Edward Kann and Mrs. Margaret Kann as joint tenants with right of survivorship." Another letter from White, Weld & Co. to Mr. Kann, dated October 11, 1949, requests that Mr. Kann "inform us what Mrs. Kann's beneficial ownership is in the Joint Account," and states "We assume that it is 50% but we have no way of confirming this from our files."

The court sustained objections to the introduction in evidence by the executrix of a letter dated April 2, 1960, from the decedent to Mr. Thoms with reference to the proposed preparation of a will. In that letter, Mr. Kann requests that Mr. Thoms supply his opinion relative to the wording of a proposed will. The letter includes a statement that when the Kanns were married in 1913 they "signed a legal document at Vienna (Austria), stipulating joint ownership of all properties, which act probably is synonymous with California 'community property.' This proviso, in practice, means that all my possessions, primarily my stock portfolios . . . are in joint account. . . ."

Some of the findings are in substance as follows: Under paragraph 7 of the will, any federal estate or California

inheritance taxes shall be paid from the residue of the estate. The stocks were not held in joint tenancy by the testator and the executrix on the date of the testator's death. The stocks were acquired by the testator while he and the executrix were domiciled outside California, or are substitutes of assets so acquired. The testator intended to dispose of all of his property, other than joint tenancies. The testator intended the executrix, who is his widow, to take the residue of his estate after payment of the legacy to Peter Arnovich and the ''25% legacy'' to his brother and sister. The testator did not intend that the executrix ''might take both under the will and against it.'' The bond were acquired by the testator during the marriage and while he was not domiciled in California, and were owned by the testator, and were not joint tenancy, on the date of his death. The executrix failed to use reasonable diligence to marshal all of the bonds as assets of the estate, and failed to include in her inventory such of the bonds that she did have in her possession. The services performed by counsel for the objectors caused an increase in the assets passing under the testator's will by approximately $35,500 (25 percent of $142,050). To the extent of $17,750, said services benefited a person, Alfred Kann, other than the said counsel's clients. The reasonable value of such service is $1,950. It is just and equitable that the costs of such services be charged against the estate as a whole. Pursuant to stipulation and order Charlotte Fischer assigned her interest in the estate to Ilse Boros and Harry Fisher, and said assignment was duly served on the executrix and filed herein. All of the said assets were acquired by the testator while he was domiciled outside California, and would have been community property of the testator and the executrix if the testator had been domiciled in California at the time the assets were acquired.

Some of the conclusions of law are in substance as follows: Neither the legacy to Peter Arnovich nor the legacies to Alfred Kann and to the assignees of Charlotte Fischer should be diminished by charging them with any portion of the federal estate or California inheritance taxes payable herein. The burden of proving that the stocks and bonds were held in joint tenancy, or at least the burden of going forward with such proof, was on the executrix, as the person asserting the existence of such joint tenancies. The executrix failed to carry either of such burdens. The stocks and bonds are ''quasi-community property'' under section 201.5 of the Probate

Code. The executrix has the right under section 201.5 to take one-half of the quasi-community property against the will in lieu of her rights under the will, and, pursuant to section 201.7 of the Probate Code, the executrix is required to elect whether to so take against the will or to take under the will. The executrix shall file an amended inventory which includes as quasi-community property all of the stocks and all of the bonds which, using reasonable diligence, she can find; and she shall file an affidavit showing diligent search for the bonds. The executrix shall file an amended final account, report, and petition for distribution and for allowance of attorney's fees which shall include all of the assets described in the findings, except those bonds which, using reasonable diligence, the executrix is unable to find.

Before considering appellant's contentions, it is to be noted that respondents contend that the appeal should be dismissed upon the ground that the executrix is not an "aggrieved party." They assert that since the notice of appeal refers to "the executrix" only, and does not refer to Margaret Kann (executrix) individually, the appeal should be dismissed because the executrix is not an aggrieved party. (Citing *Estate of Strong,* 10 Cal.2d 389 [74 P.2d 231], and *Estate of Babb,* 200 Cal. 252 [252 P. 1039].) The order appealed from directs the executrix, among other things, to file an amended inventory, to obtain an amended inheritance tax report, to make a diligent search for the bonds and file an affidavit with reference to those bonds which she cannot find, and to file an amended account, report, and petition for distribution which includes the stocks and bonds. The executrix is an aggrieved party. Respondents' contention is not sustainable.

Appellant contends that the court erred in ordering the inclusion of the securities in the account in that (1) the objectors had the burden of proving that the securities were not joint tenancy property, and the objectors did not meet that burden, and (2) if the petitioner had the burden of proving that the securities were joint tenancy property, then petitioner met that burden.

"The burden of establishing a joint tenancy is upon the person claiming it." (*Cordasco* v. *Scalero,* 203 Cal.App. 2d 95, 104 [21 Cal.Rptr. 339] ; see *Crocker-Anglo Nat. Bank* v. *American Trust Co.,* 170 Cal.App.2d 289, 299 [338 P.2d 617].) It has also been held that an executor has the burden of proving the correctness of his accounts, rather than placing

upon contestants the burden of proving that the accounts are not correct. (*Estate of Barreiro*, 125 Cal.App. 752 [14 P.2d 786].) ▆ In the present case, the executrix had filed an inventory wherein she listed the securities as "joint tenancy property." She filed a final account which did not include the joint tenancy property as assets of the estate. One of the grounds of objection was that the securities were not joint tenancy property. At the hearing, the objectors introduced evidence showing the existence of the securities. The executrix then presented evidence to the effect that the securities were held in joint tenancy. It thus appears that the executrix, who had a duty to include all assets of the estate in her account, was claiming that the securities, which admittedly existed, were held in joint tenancy, and therefore were not assets of the estate. Under the circumstances, the trial court properly concluded that the executrix had the burden of proving that the securities were joint tenancy property.

Appellant also asserts that if the executrix had the burden of proving that the securities were joint tenancy property, she met that burden by presenting evidence (the ledger sheets of White, Weld & Co. and letters from the company) showing that the brokerage account was maintained by White, Weld & Co. in the names of the decedent and the executrix, as joint tenants with the right of survivorship. (The securities were not presented in evidence, and there was no evidence regarding the records of the corporations whose shares were represented in the securities.[3]) The ledger sheets, as previously stated, have the words "Edward Kann and Mrs. Margaret Kann as Joint Tenants W R S" at the top thereof. A letter from White, Weld & Co. refers to the sheets and other papers in the possession of White, Weld & Co., and the letter states that Mr. Kann "undoubtedly" signed a form agreement for a joint tenancy account, but that such agreement "appears" to have been lost as no copy thereof is in White, Weld & Co.'s files. That letter also suggests that a copy of the agreement might be found among Mr. Kann's papers. (No copy of the agreement was presented in evidence.) Another letter from White, Weld & Co., written prior to the death of the decedent, and after the account had been opened, includes statements requesting Mr. Kann to inform White, Weld & Co. "what Mrs. Kann's beneficial ownership is in the joint account." That letter also includes a statement that "We [White, Weld & Co.] assume that it is 50% but we have no way of confirm-

[3]See Corporations Code, section 2414.

ing this from our files.'' Mrs. Kann testified that none of her money or property had been used to purchase the securities.

■ ''The method of creating a joint tenancy is set forth in section 683 of the Civil Code'' (*Berl* v. *Rosenberg,* 169 Cal.App.2d 125, 133 [336 P.2d 975]), which provides in part as follows: ''A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy . . . . A joint tenancy in personal property may be created by a written transfer, instrument, or agreement.'' In interpreting that section ''it has been held that a joint tenancy in personal property can only be created by a writing (*California Trust Co.* v. *Bennett,* 33 Cal.2d 694 [204 P.2d 324]) and the intention to create a joint tenancy must be specifically set forth in the writing.'' (*Berl* v. *Rosenberg, supra,* p. 133. See *Cooke* v. *Tsipouroglou,* 59 Cal.2d 660, 664 [31 Cal.Rptr. 60, 381 P.2d 940]; *Cordasco* v. *Scalero, supra,* 203 Cal.App.2d at p. 103; *Estate of Hoefflin,* 176 Cal.App.2d 609, 628 [1 Cal.Rptr. 642]; *Crocker-Anglo Nat. Bank* v. *American Trust Co., supra,* 170 Cal.App.2d at p. 295; *Estate of Horn,* 102 Cal.App.2d 635, 639 [228 P.2d 99]; *Estate of Dean,* 68 Cal.App.2d 86 [155 P.2d 901]; 13 Cal.Jur.2d, Cotenancy, § 9, p. 296, and § 12, p. 298.)

■ In the present case, as above shown, the evidence in support of the alleged joint tenancy consists of ledger sheets of White, Weld & Co. and letters from that company. Other than those documents, there is no written instrument or agreement in evidence which specifically declares an intention to create a joint tenancy in the securities. The securities were not presented in evidence; and none of the records of the corporations, issuing the securities, was presented in evidence. The ledger sheets of White, Weld & Co., relating to a brokerage account, are in the names of Mr. and Mrs. Kann as joint tenants, and there are statements by White, Weld & Co (in correspondence) to the effect that although their records do not include an agreement creating a joint tenancy, such an agreement was ''undoubtedly'' made since their records show that White, Weld & Co. maintained the account as a joint tenancy account. In a letter from White, Weld & Co., however, to Mr. Kann, White, Weld & Co. requested information as to whether Mrs. Kann had an interest in the account, and stated that they had ''no way of confirming this from our files.'' Furthermore, the executrix testified that none of her money was used to purchase the securities or the assets that

were used to purchase the securities. The court did not err in finding that the securities were not joint tenancy property. In view of that conclusion, it is unnecessary to discuss respondents' contention that the court erred in overruling their objection to receiving in evidence the ledger sheets and correspondence. (That objection was made upon the grounds that said documents were hearsay, were merely opinions of White, Weld & Co. that a joint tenancy had been created, and were introduced without foundation testimony by any employee or representative of White, Weld & Co.)

Appellant further contends that the court erred in finding that the securities were quasi-community property under section 201.5 of the Probate Code. She asserts, in addition to her contention that the securities were joint tenancy property, that the securities were ''community property'' under provisions of the Civil Code of the Republic of China. In her brief appellant states that she does not dispute the finding that the property (securities) was acquired ''in the Republic of China'' between 1913 and 1947, but she states that the court erroneously concluded that it was ''201.5 property'' (and thereby allegedly subject to the election requirements of section 201.7 of the Probate Code), and that the court ''should have apprised itself of the law of the Republic of China'' under which law such property was community property. Also in her brief, appellant sets forth various provisions of the Civil Code of the Republic of China which allegedly were in effect in 1929. During the hearing, the trial judge said that if counsel intended to rely on Chinese law, then ''I want to be advised by some reliable reference.'' The judge also referred to various changes in the governments in China (from ''Imperial China,'' to ''Sun Yat-sen,'' to ''Chiang Kai-shek,'' to ''Communists'') during the period in question (1913-1947). The executrix did not present any evidence in the trial court with reference to the law of China or indicate that she intended to rely on such law. (See *Smith* v. *Smith,* 201 Cal.App.2d 377, 381-382 [20 Cal.Rptr. 95].) She cannot properly present the law of China by setting forth in her brief purported quotations from the 1929 version of the Civil Code of the Republic of China. Furthermore, the executrix testified that she and the decedent, while they resided in China, retained their Austrian (Czechoslovakian) citizenship and did not become citizens of China. This contention of appellant is not sustainable.

Appellant also contends that the court erred in construing, as a special bequest, the bequest of 25 percent of the

net estate to the decedent's brother and sister. She asserts that the "calendar notes" did not inform the executrix that the court "was considering" any bequest other than the bequest to Peter G. Arnovich as a specific bequest; and, that if she (executrix) had been so informed she would have presented evidence to explain the testator's intent with reference to the bequest. There was no finding that the bequests were specific bequests. Apparently appellant's contention is that the court, by concluding that neither the bequest to Peter G. Arnovich nor the 25 percent bequest to the brother and sister should be charged with state inheritance or federal estate taxes, impliedly found that such bequests were "specific" bequests because the testator had provided in the will that "All specific bequests made herein shall be made free of" such taxes, and that such taxes be paid from the "residue." Under the evidence presented, the court properly construed such provision to mean that the two bequests were to be received free of such taxes, and the taxes were to be paid from the residue. Appellant's assertion with reference to the calendar notes is not sustainable.

A further contention of appellant is that the court erred in awarding attorney fees to the objector's attorney, payable from the estate. In *Estate of Reade*, 31 Cal.2d 669, 672 [191 P.2d 745], it was held that the trial court properly awarded attorney fees, payable from estate funds, to the attorney rendering service to a person who successfully objected to an administratrix' account on the theory that such services created or preserved a fund which benefited all the heirs. (See *Estate of Swanson*, 171 Cal.App.2d 437, 440-441 [340 P.2d 695]; *Estate of Lundell*, 107 Cal.App.2d 463. 464 [237 P.2d 62].) In the present case, where, as a result of the objections, the assets of the estate were increased (to include the securities which the executrix had excluded from her account), and where the trial court found that the services of the objectors' attorney increased the assets. passing under the will and benefited a legatee other than the objectors, the court did not err in awarding the attorney's fees.

The order is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied August 30, 1967.