[Civ. No. 54303. Second Dist., Div. Four. Oct. 11, 1979.]

PAUL R. HUTCHINSON et al., Plaintiffs, Cross-defendants and Respondents, v.
LORRAYN GERTSCH, as Administratrix With the Will Annexed, etc., Defendant, Cross-complainant and Appellant.

## COUNSEL

Lorrayn Gertsch, in pro. per., for Defendant, Cross-complainant and Appellant.

Mark A. Treadwell for Plaintiffs, Cross-defendants and Respondents.

## OPINION

**JEFFERSON (Bernard), J.**—This is an appeal by defendant and cross-complainant Lorrayn Gertsch, administratrix-with-the-will-annexed of the estate of her deceased husband, Charles Arco Gertsch, from certain orders and judgments entered in the superior court after the consolidated trial of a probate matter and of a general civil case.

The present plaintiffs, Paul R. Hutchinson and James A. Irwin, attorneys at law, initially petitioned the probate court for extraordinary fees of $7,563.39 to be paid from the estate of Charles Arco Gertsch.

Administratrix Lorrayn Gertsch opposed the petition when the matter came on for hearing on the ground that the services were rendered to her personally before her appointment as administratrix and, hence, the probate court lacked jurisdiction. The matter was then put off calendar in the probate court.

Plaintiff attorneys then filed a civil action against Lorrayn Gertsch as an individual to recover the same amount of fees sought in the probate petition. By an amended and supplemental complaint in the civil action, plaintiff attorneys sought declaratory relief that their services to defendant Lorrayn Gertsch were rendered to her individually and to her as administratrix-with-will-annexed of the estate of her deceased husband, and that they were entitled to be paid from the estate for such services.

In a second amended cross-complaint against the plaintiff attorneys in the civil action, Lorrayn Gertsch as cross-complainant alleged that plaintiff lawyers had been negligent in performing legal services for her and the estate, had committed fraud, and had breached their contract of employment. She requested both compensatory and punitive damages.

Prior to trial of the civil action, the probate petition of plaintiff lawyers for extraordinary fees was ordered consolidated with the general civil litigation pending between the parties, and the matter came on for trial. Sitting without a jury, the trial court took evidence on the issue of attorney fees due plaintiffs; it determined that plaintiffs were entitled to $7,563.39, the amount originally requested as extraordinary fees against the Gertsch estate; that the matter of fees was properly the subject of probate jurisdiction; and that a lien for the sum due plaintiffs would be imposed on the Gertsch estate.

After these nonjury determinations had been made, a jury was impanelled to determine the cross-complaint filed by Lorrayn Gertsch against the plaintiff attorneys. The jury returned a verdict in favor of cross-defendants Hutchinson and Irwin. Cross-complainant Lorrayn Gertsch, who was represented in the trial by counsel, now prosecutes this appeal in propria persona.[1]

---

[1]At trial, Attorney Irwin's assignment to Attorney Hutchinson of the fees recoverable herein was admitted into evidence; Irwin and Hutchinson had ceased practicing law together. While Irwin was named a defendant in the negligence action, no evidence was presented which demonstrated any involvement in this matter and the trial judge directed a verdict in his favor, which we affirm. Attorney Hutchinson is the respondent here.

During the pendency of this appeal, defendant made a motion to augment the record to include certain documentary evidence. We delayed ruling upon the augmentation request until such time as the case could be reviewed in its entirety. We shall discuss the augmentation request, *infra*. Prior to oral argument, this court made an order requesting the parties to address themselves to certain questions we deemed relevant to a resolution of the issues raised on appeal.

## I

### *The Factual and Procedural Background*

In order to understand the issues presented, which center upon jurisdictional and procedural matters as well as the substantive issues involved in the litigation, we summarize the pertinent facts and procedural history.

Charles Arco Gertsch died on September 22, 1965. His will named as executor a long time friend, George Fiore. The sole beneficiary of the estate was his widow, Lorrayn Gertsch. The will was duly admitted to probate, and letters testamentary were issued to Fiore in November 1965, with William Camusi serving as his attorney.

The decedent had been a licensed private investigator, highly regarded for his skill. He had worked for a number of plaintiff personal injury attorneys in Los Angeles; many of his arrangements with these attorneys were made orally and often his remuneration was made contingent upon recovery by the plaintiff in these cases; he would receive a percentage of any net recovery the attorney obtained in the case.

In August 1965, shortly before his death, Gertsch had made a list, in his handwriting, of 28 cases in which he had a possible interest at that time. A substantial number of these cases were being handled by attorney Raoul Magana, including one large matter known as the "Braceros" case. Another major litigation was entitled *Bleck* v. *Kronish*; plaintiff's counsel in *Bleck* was Attorney William Camusi. Fiore, as executor, retained Camusi to be his attorney in connection with the Gertsch estate, although both were aware that Camusi had a potential conflict of interest, due to his contingent arrangement with the decedent in *Bleck* v. *Kronish*.

Fiore undertook the task of seeking to recover monies due the Gertsch estate. This consisted of investigating the cases which had been listed by

the decedent, making claims against the attorneys and engaging in settlement negotiations with various of the attorneys for whom the decedent had worked. The task was complicated by the fact that, in some instances, Gertsch had not completed all of the investigative work required on some of the cases, and it was necessary to take this fact into account in arriving at a fair settlement of what was due his estate. For one reason or another, some of the cases had resulted in no recovery at all, so that the contingency was lost. Some claims were paid to Fiore; some were settled by negotiation. But Fiore never presented any of these settlements to the probate court for approval.

Decedent's widow, Lorrayn Gertsch, eventually became dissatisfied with the manner in which the estate was being administered by Fiore as executor, suspecting that the estate was not receiving adequate sums in settlement of the various attorneys' obligations to decedent. On April 18, 1969, she consulted Attorney Paul Hutchinson. Hutchinson had been practicing law for many years and had extensive experience in probate matters.

Defendant communicated her suspicions about the estate administration to Hutchinson, who agreed to examine the probate court file; when he did so, he discovered that the inventory included therein had been compiled in what he regarded as a very slipshod manner. Hutchinson undertook the representation of Mrs. Gertsch. The objectives were to have Fiore removed as executor, to have him surcharged for losses to the estate, and to have Fiore replaced with Mrs. Gertsch as administratrix.

On July 3, 1969, after Hutchinson was retained at an hourly rate by Mrs. Gertsch, objection was made on Mrs. Gertsch's behalf to Fiore's account. On November 18, 1971, through plaintiff attorneys, Lorrayn Gertsch filed an amended and supplemental petition in the probate court in which she made objections to Fiore's account and report and request for executor and attorney fees and in which she sought the removal of Fiore as executor and her appointment as administratrix-with-will-annexed of the estate. Attorney Hutchinson's investigation of the Gertsch estate's problems with collecting claims against the personal injury attorneys for whom the decedent had worked, led to a conclusion that there were about six cases in which there appeared to be a real prospect of recovery of additional sums for the Gertsch estate.

In October and November 1972, Hutchinson represented Mrs. Gertsch in the probate court at the trial of the Fiore removal petition and of the

objections to Fiore's account. On October 16, 1972, a stipulation was entered into that Fiore would step down as executor with Mrs. Gertsch replacing him; that the surcharge trial—the objections to Fiore's account—would continue with Mrs. Gertsch acting as the administratrix although formal letters of administration were not issued to her until December 5, 1972.

At the surcharge trial, two matters were particularly the object of scrutiny by the probate judge: the settlements made by Fiore of the Gertsch claim in the "Braceros" case and in *Bleck* v. *Kronish*.

As for "Braceros," the net recovery to Attorney Magana had been about $700,000; the Gertsch arrangement had been for him to receive 5 percent of the net recovery, which would amount to $35,000. Fiore, however, had negotiated a settlement with Attorney Magana for only $10,000—a settlement approved by Mrs. Gertsch. This lesser amount was considered an appropriate settlement amount by Magana who insisted that Gertsch had not completed his investigative assignment (in 1963) before his death. The probate judge, however, reevaluated the Gertsch claim on the "Braceros" case at $20,000 as a fair settlement amount and, accordingly, surcharged Fiore in the sum of $10,000.

Fiore had also settled the Gertsch claim to *Bleck* v. *Kronish* proceeds with Attorney Camusi for $10,000. Hutchinson was successful in preventing probate court approval of the *Bleck* settlement when it appeared that the net recovery in the case had been very substantial. At a later time, Attorney David Harney, retained by Mrs. Gertsch, negotiated a settlement of the estate claim in the *Bleck* v. *Kronish* case for $25,000.

Fiore was surcharged by the probate judge for a total sum of about $19,000. In addition, the probate judge disallowed one-half of the statutory fees sought by executor Fiore and his attorney, Camusi, and denied in its entirety their request for extraordinary fees. Thus, the Gertsch estate ultimately benefited substantially from the activities of Attorney Hutchinson. The surcharge order was entered January 12, 1973.

However, Mrs. Gertsch was not satisfied with the results of the surcharge trial. She insists that Attorney Hutchinson had told her that, if the surcharge trial did not bring adequate recovery to the estate she could successfully sue Fiore, Camusi and Magana to obtain more money. Hutchinson denied that he had told Mrs. Gertsch that this was possible. Mrs. Gertsch was particularly insistent on suing Attorney Magana, due to

her suspicion that, in some unspecified manner, Attorney Magana had cheated the estate of monies due. Hutchinson, she contended, had promised to sue Magana. Hutchinson denied it. He said that he had concluded that, absent evidence of collusion between Fiore and Magana, there were no grounds upon which to base a suit against Magana. Hutchinson had informed his client, Mrs. Gertsch, that if she wished to pursue Magana, she should consult other counsel.

Commencing August 31, 1969, Hutchinson had billed Mrs. Gertsch at a rate of $60 per hour, and she had made payments on the account. A large billing—for $7,047—was made on November 30, 1972, just after the surcharge trial had concluded. Mrs. Gertsch objected to the billing, asserting that it was not sufficiently detailed and did not reflect the original purported understanding that she was to be charged at a rate of $50 per hour. Hutchinson, she stated, would have to be patient about payment. The attorney-client relationship between Hutchinson and Mrs. Gertsch continued to deteriorate and, in July 1973, it was terminated.

## II

*Does an Heir Have a Right to a Jury Trial for the Determination of Attorney Fees for Legal Services Rendered to Such Heir Prior to the Issuance of Letters of Administration to Such Heir?*

The petition for extraordinary fees of $7,563.39 was filed in the probate court by Hutchinson on December 21, 1973. This petition was opposed by Mrs. Gertsch for a variety of reasons. When the matter came on for hearing on April 25, 1974, there was a conference between the parties in chambers—a conference not reported. We have examined the minute order contained in the probate file; it appears to reflect the court's understanding that a problem was presented by the fact that the fees had been incurred for services rendered by Hutchinson to Mrs. Gertsch prior to the issuance of letters of administration to her as administratrix. The probate minute order recites that "[t]he purpose of this order is to permit petitioner [Hutchinson] to file an independent action against respondent [Mrs. Gertsch] individually and thereafter to consolidate the same with these proceedings so as to avoid a circuitry of actions." By stipulation of the parties, the hearing on Hutchinson's petition for fees was placed off calendar.

On August 20, 1974, Hutchinson then filed the general civil complaint against Mrs. Gertsch for monies due. The cross-complaint by Mrs. Gertsch for damages against Hutchinson followed. As indicated, at the consolidated trial, Hutchinson was successful in obtaining his fees and defeating Mrs. Gertsch's cross-complaint for damages for negligent representation.

On this appeal, Mrs. Gertsch contends that she was deprived of the right to trial by jury concerning Attorney Hutchinson's claim for attorney fees. We now consider this contention.

The general rule in California is that compensation for the services of an attorney must be paid by the person employing him. This general rule, however, is subject to various exceptions such as the presence of a special agreement, a special statutory provision, or exceptional circumstances.

In probate matters, provision is made by statute for payment from the estate of fees to "attorneys for executors and administrators . . . conducting the ordinary probate proceedings, . . ." (Prob. Code, §§ 910, 911.) In addition, Probate Code section 910 provides, in pertinent part, that "[a]ttorneys for executors and administrators shall be allowed out of the estate, . . . such further amount as the court may deem just and reasonable for extraordinary services." It has long been settled that the probate court is the proper forum for determining the validity and the reasonableness of extraordinary compensation sought from the estate by an executor or his legal representative. Such determinations are made by the court; the issues arising over such fees are not triable by jury. (*Estate of England* (1931) 214 Cal. 298, 300 [5 P.2d 428].) It was recently pointed out by our high court that "[t]here is no right to a jury in probate proceedings unless that right is granted by statute." (*Estate of Beach* (1975) 15 Cal.3d 623, 642 [125 Cal.Rptr. 570, 542 P.2d 994].)

In the early case of *Estate of England,* 214 Cal. 298 [5 P.2d 428], decided in 1931, the court made the observation that "[j]ury trials in probate proceedings were unknown to the common law and hence must have express statutory authority to be allowed. [Citations.] It has several times been expressly held that in the absence of a statute so providing, trials by jury in the settlement of accounts in probate are not allowed." (*Id.,* at p. 300.) The *Estate of England* court added that "[l]iability for attorney's fees is an expense of administration." (*Id.,* at p. 300.)

■ It is equally well settled that "an attorney himself may apply to the probate court directly for an allowance upon his compensation." (*Estate of England, supra,* 214 Cal. 298, 300.) This procedure is provided for specifically by Probate Code section 911 for "[a]ny attorney who has rendered services to an *executor* or *administrator, . . .*" (Italics added.)

There is no doubt that, in the case before us, the services performed by Hutchinson, in obtaining Fiore's removal by resignation as executor, in obtaining a surcharge against Fiore, and in obtaining letters of administration for Mrs. Gertsch, were of substantial benefit to the Gertsch estate. But the problem presented here is that Hutchinson's services for which he requested extraordinary fees were rendered in the interests of Mrs. Gertsch as the sole heir of the decedent and in the interests of the decedent's estate prior to the issuance of formal letters of administration to Mrs. Gertsch. It is the position of Mrs. Gertsch that, since these legal services were rendered by Hutchinson—not as attorney for her as administratrix but prior thereto—Probate Code sections 910 and 911 are inapplicable to confer a court-trial jurisdiction upon the probate court and deny to her a right to contest the requested fees through trial by jury.

Respondent Hutchinson counters this position asserted by Mrs. Gertsch by advancing the argument that Mrs. Gertsch conducted herself in such a manner throughout the proceedings that, in effect, she "conceded" probate jurisdiction of the matter of fees. It is pointed out that she stipulated to her appointment as administratrix during the surcharge trial in 1972, conducted by Hutchinson for her, and identified herself in interrogatories and testimony as the administratrix who was resisting payment of fees *recoverable* from the estate.

But jurisdiction, however, may not ordinarily be conferred on a particular court by the consent of the parties. Although Probate Code sections 902, 910 and 911 refer only to services rendered by an attorney to an "executor" or "administrator," which preclude recovery of fees from an estate, under those statutory provisions, for services rendered to persons other than administrators or executors, we must consider whether the "special circumstances" exception is applicable to permit probate jurisdiction to award fees under the circumstances presented in the case before us. The "special circumstances" exception for the allowance of an attorney's fees against a person other than the person who employed the attorney exists in certain actions in equity. "For example, a plaintiff who has succeeded in protecting, preserving or increasing a fund for the *benefit* of himself and others may be awarded compensation from the

fund for the services of his attorney." (*Estate of Reade* (1948) 31 Cal.2d 669, 671-672 [191 P.2d 745].)

██ The principle has been enunciated that "[w]hile the probate court has no general equity jurisdiction and its jurisdiction generally is confined to the settlement of the estates of deceased persons, it does have the power to apply equitable principles in aid of its functions as a probate court." (*Estate of Reade, supra,* 31 Cal.2d 669, 672.)

In *Estate of Reade,* a decedent left as heirs seven children. One daughter was appointed administratrix of his estate. Her sister filed objections to an accounting seeking to surcharge the executrix with insurance funds she had collected but not included as assets of the estate. The court surcharged the account of the executrix for said sum. The objector requested an award of fees to her attorney to be paid from the estate. The trial court's allowance of a fee to the objector's attorney to be paid from the estate was upheld by the California Supreme Court.

The *Reade* court sustained the allowance of fees to the objecting heir's attorney on the basis of the power of the probate court "to apply equitable principles in aid of its function as a probate court." (*Id.,* at p. 672.) In so holding, the court made this cogent observation: "Here the successful contest by Mrs. Queirolo resulted in charging the administratrix in her first and final account with the additional sum of $2,654 which then became available for distribution. A fund was thus created or preserved for the benefit of all the heirs. Mrs. Queirolo has only a one-seventh interest in the estate. The application of equitable principles would seem to require that the other heirs bear their proportionate share of the expense of the litigation. We therefore conclude that the allowance of a fee for the legal services which thus redounded to the benefit of the estate and all persons interested therein was within the lawful exercise of power by the trial court (see 79 A.L.R. 523, 533), and that the order appealed from should stand." (*Id.,* at p. 672.)

Similar to *Estate of Reade* are the cases of *Estate of Kann* (1967) 253 Cal.App.2d 212 [61 Cal.Rptr. 122]; *Estate of Lundell* (1951) 107 Cal.App.2d 463 [237 P.2d 62]; and *Estate of McDonald* (1954) 128 Cal.App.2d 719 [275 P.2d 917]. In *Estate of Kann,* an heir as an objector sought to surcharge an executrix and obtain, for the objector's attorney, fees payable from the estate. In upholding an order of the trial court awarding a fee to the objector's attorney made payable from the estate, the trial court relied upon the principle set forth in *Estate of Reade.* In

interpreting the holding of *Estate of Reade*, the *Estate of Kann* court stated that, in *Estate of Reade*, "it was held that the trial court properly awarded attorney fees, payable from estate funds, to the attorney rendering service to a person who successfully objected to an administratrix' account on the theory that such services created or preserved a fund that benefited all the heirs. [Citations.] In the present case, where, as a result of the objections, the assets of the estate were increased (to include the securities which the executrix had excluded from her account), and where the trial court found that the services of the objectors' attorney increased the assets passing under the will and benefited a legatee other than the objectors, the court did not err in awarding the attorney's fees." (*Estate of Kann, supra,* 253 Cal.App.2d 212, 223.)

In *Estate of McSweeney* (1951) 107 Cal.App.2d 140 [236 P.2d 846], the court takes the position that, although Probate Code section 910, in providing for payment to attorneys of fees for "extraordinary services," uses no language to mandate that the attorney's services must necessarily be in the interests of the estate, such a requirement is included in Probate Code section 910 by reasonable inference. In light of this principle it is generally held that attorney's fees to parties involved in contests before probate or proceedings to determine heirship are not payable out of the estate. (*Estate of Raphael* (1954) 128 Cal.App.2d 92 [274 P.2d 880]; *Estate of Lagersen* (1962) 210 Cal.App.2d 788 [26 Cal.Rptr. 783]; *Estate of Pryor* (1942) 51 Cal.App.2d 735 [125 P.2d 511].) The justification for not permitting estate liability in these situations rests on the principle that estate liability would not be equitable to all persons interested in the estate.

But equitable principles have been made applicable to authorize payment of attorney's fees from an estate under circumstances where all of the heirs of the estate have benefited from the attorney's services. In *Estate of McSweeney*, the court observed that "[i]n *Estate of Dunton*, 15 Cal.App.2d 729 [60 P.2d 159], the executor's attorney was allowed out of the funds of the estate a fee for services rendered in successfully resisting a contest after probate. But the court emphasized the fact that there the executor was the sole beneficiary of the residue of the estate. The fee in such a case would, for all practical purposes, be paid by the person who solely benefited by the litigation in which the services were rendered." (*Estate of McSweeney, supra,* 107 Cal.App.2d 140, 147.)

It is to be noted that in cases such as *Estate of Reade, Estate of Lundell* and *Estate of McDonald,* one beneficiary of an estate successfully

undertakes to protect the estate by opposing the position of the personal representative. In such cases, the probate court applies equitable principles to permit the allowance of attorney's fees against the estate. "The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful." (*Estate of Stauffer* (1959) 53 Cal.2d 124, 132 [346 P.2d 748].)

Since Lorrayn Gertsch was the sole beneficiary of her deceased husband's estate, the instant case is similar in principle to *Estate of Dunton* (1936) 15 Cal.App.2d 729 [60 P.2d 159], referred to in *McSweeney* in which an attorney's fees are deemed payable from an estate as contrasted with the situation in which an allowance would be inequitable because "the persons principally benefiting [from the attorney's efforts] would bear little, if any, of the cost, and others, not parties to the litigation, would bear most, perhaps all, of that cost." (*Estate of McSweeney, supra,* 107 Cal.App.2d 140, 147.)

█ We conclude that Hutchinson's petition for extraordinary fees called upon the probate court to exercise equitable principles in aid of its probate jurisdiction under the circumstances presented in the case at bench, with the consequence that Lorrayn Gertsch, administratrix-with-the-will-annexed, possessed no right to a jury trial.

█ Our holding, however, is not to be interpreted as an assertion that the probate court has general equity jurisdiction. On the contrary, "[t]he probate court has no general equity jurisdiction. Its general jurisdiction is confined to the settlement of the estates of deceased persons. [Citations.] It has the power, however, to apply equitable and legal principles in aid of its functions as a probate court." (*Security-First Nat. Bk.* v. *Superior Court* (1934) 1 Cal.2d 749, 757 [37 P.2d 69].)

In the case at bench, the trial judge considered the probate matter of fees and the civil action for damages on a consolidated basis. He thus assumed probate jurisdiction to resolve the fee dispute. █ It is an

accepted principle of law that a superior court judge, sitting in a general civil courtroom, may invoke the "special jurisdiction" of the probate court (*Schlyen* v. *Schlyen* (1954) 43 Cal.2d 361 [273 P.2d 897]; 1 Witkin, Cal. Procedure (2d ed. 1971) § 132, p. 403) but the occasion must be appropriate for this to take place. Here it was.

## III

### *The Jury Trial on Lorrayn Gertsch's Cross-complaint on the Issue of Attorney Hutchinson's Negligence*

The cross-complainant attempts to reargue the evidence adduced at trial on the subject of Attorney Hutchinson's purported negligence. We are, of course, compelled to view that evidence in the light most favorable to Attorney Hutchinson, to whom the jury awarded the verdict. We find no insufficiency in the evidence.

■ An attorney is required to exercise " 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' " (*Smith* v. *Lewis* (1975) 13 Cal.3d 349, 356 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].) There was ample evidence presented below showing that Attorney Hutchinson possessed—not just the minimum of skill necessary to properly represent an estate litigant in a complex proceeding where it was necessary to contest issues with experienced adversaries—but that he possessed considerably more expertise than the law requires as a minimum. He also obtained substantial benefits for his client.

The *Smith* court explains that the measure of damages in attorney malpractice actions is "the value of the claim lost." (*Id.*, at p. 361.) There was not one shred of evidence establishing that Attorney Hutchinson had failed to pursue every legitimate claim of the Gertsch estate, or that any conspiracy existed to "favor" Attorney Magana. Hutchinson explained precisely—and correctly—his understanding that legal ethics, as well as a reasoned conclusion based on an analysis of the facts and the law, prevent an attorney from pursuing claims unsubstantiated by objective proof, and that vague suspicions of wrongdoing are not an adequate substitute for such proof. In sum, it appears that Mrs. Gertsch was unrealistic in assessing the benefits of her attorney's representation, a circumstance over which the attorney had no control.

## IV

### *Evidentiary Rulings and Augmentation*

Defendant appears to complain that she was not allowed to present certain evidence at trial. It is true that her able counsel did not produce expert testimony to show that Attorney Hutchinson had not met the requisite standard of care. We need not speculate on this failure, as what is clear is that no one prevented the introduction of such testimony.

The trial court did refuse to admit as irrelevant and hearsay a declaration of former executor Fiore concerning the progress of his probate administration, filed in the probate court some years earlier. Counsel for the cross-complainant declared that he was offering it—not for the truth of its content—but for the nonhearsay purpose to establish the state of mind of Attorney Hutchinson at the time the declaration was filed. The record does not indicate how Hutchinson's state of mind became a disputed fact of consequence to the determination of the action to make the declarant's statement—Fiore's declaration—relevant for a nonhearsay purpose. (See Evid. Code, §§ 210, 350.) The offer of declarant Fiore's declaration for a nonhearsay purpose nullified the hearsay objection but not the irrelevancy objection. (See Jefferson, Cal. Evidence Benchbook (1972) Hearsay and Nonhearsay, § 1.3, pp. 5-10.)

Mrs. Gertsch has offered, as augmentation to the appellate record, a copy of her objections to the petition for extraordinary fees, filed in the probate proceedings, and a copy of a letter she wrote to Attorney Hutchinson on January 18, 1973, which contained a recital of her varied complaints about his representation of her. These documents were considered below. The request for augmentation is granted. But these documents can offer no support to Mrs. Gertsch's contentions of errors committed below.

## V

### *The Claim of Unfairness*

Mrs. Gertsch complains that she was treated unfairly by the trial judge during the trial. It appears that, on occasion during this litigation, conferences were conducted in the judge's chambers between the judge and counsel for both parties. Attorney Hutchinson, as a member of the bar, was allowed to participate in these conferences by the trial judge

while Mrs. Gertsch was not. It also appears that Attorney Hutchinson was permitted considerable leeway in combining testimony and argument, although Mrs. Gertsch's trial counsel did succeed in limiting this situation. These circumstances have prompted Mrs. Gertsch to complain of unfairness on this appeal.

■ When an attorney is in court as a litigant, it is particularly incumbent on the trial judge to conduct the proceedings in such a manner as to preserve the *appearance* of impartiality as well as the substance. This would ordinarily preclude either allowing the attorney litigant access to chambers in the absence of his adversary, or to engage in argument while on the witness stand. The trial judge erred in treating Hutchinson, a litigant, in a different fashion than he treated Mrs. Gertsch, a litigant, in the indicated instances. Our conclusion here, however, is that, given the state of the evidence and record below, the error is not prejudicial. We find that it is not reasonably probable that a result more favorable to Mrs. Gertsch would have been reached in the absence of such error.

The judgment and orders are affirmed.

Files, P. J., and Alarcon, J., concurred.